**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**John Henry ALLOWAY, Defendant-
Appellant.**

**No. 17911.**

United States Court of Appeals
Sixth Circuit.

June 26, 1968.

———◆———

Charles W. Lusk, Jr., Chattanooga, Tenn., for defendant-appellant.

John H. Reddy, U. S. Atty., Chattanooga, Tenn., for plaintiff-appellee; Thomas A. Williams, Asst. U. S. Atty., Chattanooga, Tenn., on brief.

Before O'SULLIVAN, PHILLIPS and COMBS, Circuit Judges.

O'SULLIVAN, Circuit Judge.

Upon a jury trial, held in the United States District Court for the Eastern District of Tennessee John Henry Alloway was found guilty of armed robbery of a Federal Savings & Loan Association, in violation of 18 U.S.C. § 2113(a) and (d). On February 24, 1967, he was sentenced to fifteen years imprisonment. He appeals to this Court for a new trial on his assertion that certain physical exhibits which were received in evidence had been illegally obtained from his trailer home, and that improper argument was made to the jury by government counsel. We affirm.

On August 3, 1966, about 1:30 P.M., the Highland Plaza office of the Chattanooga Federal Savings & Loan Association was robbed by a single gunman who took from the Association's employees the sum of $6,570.19. He came through the front door of the establishment and then, brandishing an automatic revolver, ordered the two employees present to "hand over the money," giving them a paper sack in which to place it. When he was satisfied that he had obtained all the cash in the place, he ordered the employees to the back of the vault and then left the premises.

Throughout this affair the felon made no attempt to conceal his identity, and upon arrival of the police he was described by the bank employees as wearing a dark suit and tie—as rather well dressed. One of the employees of the Loan Association told the police that before the robbery he had observed the thief park a blue and white Chevrolet station wagon with Louisiana license plates in the bank parking area. A Bond Clothing Company merchandise tag was found on the lobby floor of the Loan Association, and the two employees were certain that the clothing tag was not in the lobby before the robbery. From information obtained from a local Bond Clothing Company store, the police determined that one John Kamp of 830 Cherokee Boulevard, Chattanooga, had likely purchased the suit indicated by the tag. At 3:30 P.M. the local police and the FBI went to this address, observed a blue and white Chevrolet with Louisiana license plates, attached to a trailer, and arrested the appellant, John Henry Alloway, who admitted his use of the alias John Kamp. A routine search of his person revealed his possession of $972 in currency, including some coins.

Warrants were immediately obtained for a search of appellant's car and house trailer. This search of the trailer a short time after appellant's arrest yielded a loaded 9 millimeter Beretta automatic pistol and $90.34 in coins contained in a cigar box. In the course of the search, two men's suits were discov-

ered, one of them a dark suit bearing a Bond Clothing label. Appellant's wife, orally and by written authorization, consented to the taking of the suits by the officers.

At the trial, appellant was positively identified as the robber by the two bank employees. They also had identified him in a police lineup on the day of the robbery. The evidence of appellant's guilt was clear. Before trial a motion was made for return and suppression, as evidence, of the two suits of clothes, the box of coins, and other items taken on the day of appellant's arrest. This motion was denied.

1. Search and Seizure.

The search warrant described the property to be seized as:

"U.S. currency in the approximate amount of Six Thousand Five Hundred and Seventy Dollars and Nineteen Cents ($6,570.19), the proceeds of the robbery of the Highland Plaza Branch of the Chattanooga Federal Savings and Loan Association of this date, and any weapon used in said robbery."

Seized at the time of the search were a loaded automatic pistol, a cigar box containing $90.34 in miscellaneous coins, including a foreign coin, and two suits of clothes belonging to Alloway. On this appeal, appellant contests the legality of the seizure of the coins and the suits.

a) The box of coins.

■■ On the pretrial motion to suppress, appellant Alloway's wife testified that the coins were her own collection; she so informed the officers at the time of their seizure. The officers had been told by loan association personnel that "currency and silver" had been stolen, and testimony at trial established that approximately $100 in miscellaneous coins were included in the "loot". Mrs. Alloway did not testify at the trial. We think that it was for the District Judge, and later for the jury, to determine whether all, or some, of the coins were part of the money stolen in the robbery.

We consider this matter of little importance. The receipt of the coins in evidence if error, was clearly harmless in the context of the other very cogent evidence of appellant's guilt. Rule 52(a) F.R.Crim.P. See also Chapman v. State of California, 386 U.S. 18, 24–26, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967); Ethington v. United States, 379 F.2d 965, 966 (6th Cir. 1967).

b) Appellant's clothing.

■ During the course of the search, the officers saw two dark suits of clothes identified by Mrs. Alloway as belonging to her husband. Inasmuch as they had not been specifically described in the warrant, the officers asked Mrs. Alloway if they could take them. She consented, both orally and by signing a written consent. One of the suits bore a Bond Clothing Company label. In view of the fact that a Bond Clothing Company merchandise tag found on the floor of the loan association had led the officers to Alloway, who was identified by the victims of the robbery as wearing a dark business suit, the suits were indeed relevant and material as evidence. They were admissible unless the government's possession of them was unlawful. For the several reasons which follow, we hold that the suits were properly admitted.

i) The wife's consent.

As set out above, Alloway was arrested at his trailer by state and FBI officers several hours after the robbery. Immediately after the arrest the officers procured a warrant to search the trailer home. When the officers arrived to make the search, the door of the trailer was unlocked and no one was at home. After completion of the search, Mrs. Alloway returned and was asked for her permission to take the two suits of clothing already discovered. As set out above she consented both orally and in writing.

Upon a pretrial motion to return these suits to Alloway, the wife attempted to claim that her consent was coerced. She said she could not remember whether

she read the authorization, nor did she recall signing it. However, she admitted the genuineness of her signature appended to the following statement which she read at the hearing:

"I, Elizabeth Ann Alloway, give Mr. William B. Cole, who has identified himself to me as a special agent of the FBI, permission to take two men's suits, one having the label of Richmond Brothers and one having—I can't read that—by Bond Clothing, these suits having been found in the rear closet of my—something—located at the City View Motel."

As to her oral consent, she gave this account:

"Q. You don't recall any other conversation you had with Agent Cole with regard to these suits?

"A. They just found them in the closet, and he said 'we're going to take these with us,' and he said, 'do you mind' and I said, 'would it do any good if I did?'

"Q. You said what? You said yes, you did?

"A. No. He said 'we are taking these suits, do you mind?' And I said, 'would it do any good if I did?'"

She later concluded the subject as follows:

"Q. Well, they didn't make you sign your name to this paper, did they?

"A. No.

"Q. You do remember signing it now?

"A. No, I don't remember. It's my signature but I don't remember signing it.

"Q. Well, how can you remember them not forcing you to sign the paper and then—

"A. (Interposing) Because they didn't force me to do anything."

Two FBI officers testified that Mrs. Alloway readily gave her consent to the removal of the suits. The officer who prepared the written consent said he gave it to her and asked her to read it and that she made no objection to signing it. At the end of the motion to suppress, the District Judge said:

"The Court: Well, the purpose of the motion to suppress is to determine whether or not the Government had a legal right to use the evidence if they elect to do so * * *.

"I believe at this time that the motion to suppress should be overruled. I believe there is no evidence here upon which the Court would be justified in suppressing evidence—this does not in any way rule upon the admissibility of the evidence for any other reason— the only thing we have here is the question of whether or not this evidence—if it is evidence, came into the possession of the Government lawfully."

In Rosenthall v. Henderson, 389 F.2d 514, 515–516 (6th Cir. 1968), we were dealing with the voluntariness of a consent to search and indicated that where consent is relied upon, the burden is on the government to prove, as a matter of fact, that the consent was voluntarily given, citing, *inter alia,* our decision in Simmons v. Bomar, 349 F.2d 365, 366 (6th Cir. 1965) and Johnson v. Zerbst, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938). We read the District Judge's finding as adequately obedient to the applicable rule.

There remains, however, for us to say whether the wife's voluntary consent validated what was done. We will not essay refined determination whether we deal here with a seizure of property not described in a valid search warrant, or whether the seizure was made subsequent to the first search—in a second search, made without a warrant—but with the voluntary consent of the wife of the house. It would serve little purpose for us to engage in fresh dissertation upon nuances that might separate this case from others considered in the already abundant literature on search and seizure. We consider that, under the

facts of this case, the wife's consent validated the seizure of the suits and their use as evidence at the trial.

It has been held that voluntary consent by a wife or other relative may, under proper facts, support a search that turns up evidence of an accused's criminal conduct. See Maxwell v. Stephens, 348 F.2d 325, 336–337 (8th Cir. 1965) cert. denied, 382 U.S. 944, 86 S.Ct. 387, 15 L.Ed.2d 353, and the extensive discussion and citation of authorities relevant to the subject we consider. In our case of United States v. Ball, 344 F.2d 925, 926–27 (6 Cir. 1965), we approved of testimony given by government witnesses regarding incriminating evidence, observed after a warrantless entry into the accused's home with the consent of his wife. We supported our ruling by citing cases which had held that, under the facts there involved, a wife's consent was a valid substitute for a search warrant. See Roberts v. United States, 332 F.2d 892, 895–898 (8th Cir. 1964), cert. denied, 380 U.S. 980, 85 S.Ct. 1344, 14 L.Ed.2d 274; Stein v. United States, 166 F.2d 851, 855 (9th Cir. 1948), cert. denied, 334 U.S. 844, 68 S.Ct. 1512, 92 L. Ed. 1768. We think it right to add that the Supreme Court in Amos v. United States, 255 U.S. 313, 317, 41 S.Ct. 266, 65 L.Ed. 654 (1921), specifically declined to rule on the question here involved, holding that there the wife's consent had been coerced. We hold that in the factual context of this case the wife's consent made lawful the seizure of the suits and their use as evidence.

ii) The Search Was Reasonable.

■ We are also of the view that in the total context of this case it cannot be said that what was done here could be condemned by the Fourth Amendment's proscription against "unreasonable searches and seizures." The officers in this case had been proceeding with meticulous observance of Alloway's rights—instead of searching his trailer without a warrant at the time of his arrest, as presumably they could have, they first obtained a search warrant.

While searching for the objects described in that warrant, they discovered the suits in question, both dark and one with a Bond Clothing Company label. We think it would have been unreasonable, and perhaps dereliction of duty on their part, to have left the Alloway premises without taking the suits, or to have had one of their number stand guard over Mrs. Alloway while another obtained a second warrant to search for suits whose location was already known to them and which were, by the presence of their own guard, already effectively seized. In United States v. Rabinowitz, 339 U.S. 56, 70 S.Ct. 430, 94 L.Ed. 653, the Supreme Court observed:

"What is a reasonable search is not to be determined by any fixed formula * * *. The recurring questions of the reasonableness of searches must find resolution in the facts and circumstances of each case * * *. Reasonableness is in the first instance for the District Court to determine." 339 U.S., at 63, 70 S.Ct., at 434, 94 L. Ed., at 659.

iii) Was Suit an Instrumentality of the Crime.

■■ The Supreme Court has given recent emphasis to the rule that only those things described in a search warrant may be seized, Stanford v. State of Texas, 379 U.S. 476, 485, 85 S.Ct. 506, 13 L.Ed.2d 431 (1965), and F.R.Crim. P. 41(e) (3), specifically provides for return and suppression of property seized but not described in the warrant. But the courts have made numerous exceptions to the generality of the rule. One such exception is that an item which can be considered a means or instrumentality of crime may be seized even though such item is not described in the warrant under which the search is being conducted. See United States v. One 1965 Buick (6th Cir. April 17, 1968), 392 F.2d 672; United States v. Pardo-Bolland, 229 F.Supp. 473, 477–478 (S.D.N.Y.1964), affirmed, 348 F.2d 316 (2d Cir. 1965); Johnson v. United States, 110 U.S.App.D.C. 351, 293 F.2d

539, 540 (1961), cert. denied, 375 U.S. 888, 84 S.Ct. 167, 11 L.Ed.2d 118; United States v. Joseph, 174 F.Supp. 539, 545 (E.D.Pa.1959), affirmed, 278 F.2d 504 (3rd Cir. 1960); Bryant v. United States, 252 F.2d 746, 749 (5th Cir. 1958); Sanders v. United States, 238 F.2d 145, 147 (10th Cir. 1956); Annotation, 79 A.L.R.2d 1005, 1013, and cases cited therein. See also, Porter v. United States, 335 F.2d 602, 606–609 (9th Cir. 1964); United States v. Eisner, 297 F.2d 595, 597–598 (6th Cir. 1962).

The question of whether items of clothing worn at the time of the commission of a crime may be considered instrumentalities of the crime has apparently arisen only infrequently. In United States v. Garris, 262 F.Supp. 175 (D. D.C.1966), it was contended that certain items of clothing seized pursuant to a search warrant were not within the purview of F.R.Crim.P. 41(b) (2), i. e., were not "[d]esigned or intended for use or which is or has been used as the means of committing a criminal offense." The Court said, at 176:

"The distinction between that which is purely evidentiary and that which constitutes the means by which crime has been committed or escape effected is not clear cut. See Marron v. United States, 275 U.S. 192, 48 S.Ct. 74, 72 L.Ed. 231 (1927); United States v. Lefkowitz, 285 U.S. 452, 52 S.Ct. 420, 76 L.Ed. 877 (1932); Abel v. United States, 362 U.S. 217, 239, 80 S.Ct. 683, 4 L.Ed.2d 688 (1960)."

It is not clear from the opinion whether or not the clothes were described in the search warrant. Noting the greater latitude given to searches made after "the informed and deliberate determinations of magistrates empowered to issue warrants," (United States v. Ventresca, 380 U.S. 102, 85 S.Ct. 741, 13 L.Ed.2d 684 (1965)), the District Court denied the motion to suppress the challenged items. See also Morton v. United States, 79 U.S.App.D.C. 329, 147 F.2d 28, 30 (1945); United States ex rel. Spero v. McKendrick, 266 F.Supp. 718, 725–726 (S.D.N.Y.1967).

There is strong reason to view the suit as an instrumentality of the crime. It was a dark, relatively new suit. The bank employees described the robber as well dressed, wearing a dark suit and tie; one of them approached him, thinking he was a customer. By the time the officers arrived at the defendant's home, several hours after the robbery, Alloway had exchanged his dark suit for shorts. It is not at all unreasonable to consider that the Bond suit was a part of the felon's planned paraphernalia and, therefore, was an instrumentality of the criminal enterprise. As we said in United States v. One 1965 Buick, 392 F.2d 672 (6th Cir. 1968):

"It should be pointed out that officers in conducting a search are not in all instances limited to the seizure of objects detailed in the warrant. Johnson v. United States, [110 U.S.App.D.C. 351,] 293 F.2d 539, 540 (1961), cert. denied, 375 U.S. 888, [84 S.Ct. 167, 11 L.Ed.2d 118] (1963). An item may be so closely related to the items detailed as to justify their seizure, i.e., where the item though not itself listed in the warrant, is an instrumentality for commission of the crime involved."

iv) Relevance of Warden v. Hayden.

We believe finally that the Supreme Court's opinion in Warden v. Hayden, 387 U.S. 294, 87 S.Ct. 1642, 18 L.Ed.2d 782 (1967), should be held dispositive of this case. The Court was there dealing with the admissibility of clothing of the accused, discovered and seized by the police in the accused's home as part of the "hot pursuit" of a culprit who had been seen leaving a place just robbed and seen also entering his home at the end of his flight. No warrant had been yet issued, either for the arrest of the suspect or for the search of his home. Relying upon the rule that "mere evidence" may not be seized whether taken under a valid search without a warrant or pursuant to a search warrant, the 4th Circuit in Hayden v. Warden, 363 F.2d 647 (1966) had held that the clothing was not admissible. The Supreme Court

opinion does away with the distinction between mere evidence, contraband, instrumentalities of the crime, etc., and holds that the clothing seized was admissible. The majority opinion there talked of the seizure of the clothes from a washing machine being *possibly* considered as part of a search for weapons and noted that the search and seizure were contemporaneous with an arrest. We consider these circumstances should not provide controlling distinction from our case. The Court said:

> "The clothes found in the washing machine matched the description of those worn by the robber and the police therefore could reasonably believe that the items would aid in the identification of the culprit." 387 U.S., at 307, 87 S.Ct., at 1650.

> \* \* \* \* \* \*

> "The 'mere evidence' limitation has spawned exceptions so numerous and confusion so great, in fact, that it is questionable whether it affords meaningful protection. But if its rejection does enlarge the area of permissible searches, the intrusions are nevertheless made after fulfilling the probable cause and particularity requirements of the Fourth Amendment and after the intervention of 'a neutral and detached magistrate. \* \* \*' Johnson v. United States, 333 U.S. 10, 14, [68 S.Ct. 367, 92 L.Ed. 436.] The Fourth Amendment allows intrusions upon privacy under these circumstances, and there is no viable reason to distinguish intrusions to secure 'mere evidence' from intrusions to secure fruits, instrumentalities, or contraband." 387 U.S. at 309, 310, 87 S.Ct., at 1651.

█ It would be merely "playing games" to find the above not analogous because of the greater care exercised by the officers here than in *Warden*. The pursuit may not have been quite as "hot" as in *Warden*, but it was at least fairly "warm". The holdup was at 1:30 P.M. and working from the clue furnished by the clothing tag, by 3:30 P.M.

the officers arrived at Alloway's trailer; they were seeking to apprehend a man who had just held up a bank at gun point. The trailer was encircled and the suspect was told to come out; he offered no resistance and was arrested. The officers did not then make a search of Alloway's premises as they might have, (United States v. Rabinowitz, supra), but took the more careful route of obtaining a search warrant. They returned shortly to make the search. When doing so, they seized the loaded gun and some coins and discovered the Bond Clothing Company suit. They did not seize it, but after Mrs. Alloway returned, got her permission to take it. We consider that the officers' conduct here can indeed be approved under the reasoning of *Warden*. We so hold.

In conclusion, we hold that on any of the above grounds the seizure and introduction into evidence of the suits did not constitute error requiring reversal.

2) District Attorney's argument.

█ Government counsel's argument to the jury contained the following: "What have we heard in defense of Mr. Alloway? Only that testimony of Mr. Datson." Upon objection, the District Judge ruled:

> "Sustain the objection. Disregard the argument. I believe the jury could recall what the evidence in the case was and decide the case on all the evidence and, of course, with instructions the Court will give you, in the case as to weighing the evidence and what should or should not be considered."

He denied a motion for mistrial and in his charge advised the jury:

> "A defendant is not required in a case to testify and if a defendant in a criminal case does not take the witness stand and testify, then no presumption of guilt may be raised from that fact and no inference of any kind may be drawn by the jury from the failure of a defendant to testify."

Prosecutors' arguments of the same general nature have been held not to

constitute comment on a defendant's failure to testify. United States v. Johnson, 337 F.2d 180, 203 (4th Cir. 1964); Davis v. United States, 279 F.2d 127 (4th Cir. 1960). See also United States v. Parisi, 365 F.2d 601, 608 (6th Cir. 1966). And in any event if the language could be construed as a comment on Alloway's failure to testify we hold that considering the District Judge's admonitions and the total context of the evidence, it was harmless error. Chapman v. State of California, 386 U.S. 18, 24–26, 87 S.Ct. 824, 17 L.Ed. 2d 705 (1967); United States v. Barnes, 383 F.2d 287, 294–95 (6th Cir. 1967). Wilson v. Anderson, 379 F.2d 330, 334 (9th Cir. 1967), reversed, 390 U.S. 523, 88 S. Ct. 1133, 20 L.Ed.2d 81 (U.S. April 2, 1968), and Fontaine v. State of California, 391 U.S. 929, 88 S.Ct. 1813, 20 L.Ed. 2d 670 (U.S. April 9, 1968), in both of which cases the Supreme Court reversed findings that such comment was harmless error under *Chapman,* are greatly distinguishable on their facts.

In his closing argument to the jury, government counsel said:

"You the jurors, are called upon in this case to be the world conscience of the community. And I'm calling on this jury to speak out for the community and let the John Alloways know that this type of conduct will not be tolerated, that we're not going to tolerate * * *."

In overruling a motion for mistrial because of the quoted argument, the District Judge told the jury:

"Well, overrule the motion for a mistrial. Of course, ladies and gentlemen, again you will base your verdict solely on the evidence and you would consider the argument only as it may or may not correspond with your recollection of the evidence of the case and if it does not correspond with your recollection of the evidence of the case you can totally disregard the argument."

We cannot say that the quoted argument exceeded permissible bounds of advocacy, and denial of mistrial in this case was a matter within the discretion of the District Judge. No abuse thereof is shown. United States v. Medlin, 353 F.2d 789, 795–96 (6th Cir. 1965); Henderson v. United States, 218 F.2d 14, 19–20, 50 A.L.R.2d 754 (6th Cir. 1955).

The judgment is affirmed.