828 F.2d 18
Unpublished Disposition
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Robert L. HINTON, Jr., Defendant-Appellant.
 No. 86-5148.
 United States Court of Appeals, Fourth Circuit.
 Argued May 7, 1987.
Decided August 18, 1987.
 
 William R. Wooton (Wooton, Wooton & Fragile, on brief), for appellant.
 Mark Lenard Gross, Department of Justice (William Bradford Reynolds, Assistant Attorney General, Walter W. Barnett, Department of Justice, Kenneth W. McAllister, United States Attorney, on brief), for appellee.
 Before K. K. HALL and WILKINS, Circuit Judges, and VAN GRAAFEILAND, Senior Circuit Judge for the Second Circuit, sitting by designation.
 PER CURIAM:
 
 
 1
 Robert L. Hinton, Jr., former Superintendent of Piedmont Correctional Center in Salisbury, North Carolina, appeals from a judgment of the United States District Court for the Middle District of North Carolina, convicting him, after a jury trial before Judge Hiram H. Ward, of conspiracy to deprive two prison inmates of their constitutional rights, 18 U.S.C. Sec. 241. We affirm.
 
 
 2
 The evidence in support of the jury's verdict, which must be viewed in a light most favorable to the Government, United States v. Arrington, 719 F.2d 701, 704 (4th Cir. 1983), cert. denied, 465 U.S. 1028 (1984), shows that, at a June, 1981 meeting in the office of John Nance, the Assistant Superintendent, three Piedmont Guard Captains, Ray Garris, Larry Jones and Jesse Phillips, discussed disciplinary problems they were having with two inmates, Billy Smith and Kenneth Thompson. Nance suggested that the guards try to handle the two inmates with psychology rather than force. Appellant Hinton, who was also present, said, however:
 
 
 3
 I'll tell you how to handle them--is you whip their damn ass and you whip it good.
 
 Hinton then continued:
 
 4
 If you goddamned Captains can't handle that Sixth Floor, I'll get me three Captains who can.
 
 
 5
 Jones, who testified as a Government witness, said:
 
 
 6
 It ain't every day our superintendent tells you exactly what he wants done--or implies. I sure would have done it.
 
 
 7
 Shortly after the foregoing instructions were given, both Smith and Thompson were severely beaten. Smith, the first victim, was taken from his cell in full restraints--chains on his legs and waist and handcuffs on his wrists--to the Sixth Floor lobby of the prison and ordered to sign a disciplinary form. When he refused to sign, Captain Garris was called. When Garris arrived, he 'went straight over to Billy Ray Smith and started beating on him with a slapjack.' (Testimony of former guard James Taylor at 317). When asked how much force was used, Taylor testified:
 
 
 8
 It was enough. It scared me so bad. There was blood and hair on the ceiling.
 
 
 9
 Id. at 318. Following Smith's beating, he was taken directly to the prison's medical unit.
 
 
 10
 Thompson then was taken under full restraint to Garris' office, where Garris slapped him and demanded Thompson's copy of a grievance form. When Thompson was returned to his Sixth Floor cell to get the form, he refused to produce it. Garris, notified of this by telephone, instructed the guard in charge:
 
 
 11
 F___ him up. Put him in Central Prison Hospital.
 
 
 12
 When the guard asked Garris if that was a direct order, the response was 'Yes', from '[m]e and Robert L. Hinton.' Two of the guards then proceeded to beat Thompson with riot batons or slapjacks. Thereafter, as the guards were taking Thompson to the medical unit, they met Garris, who said:
 
 
 13
 Y'all men don't look like you f___ed him up enough.
 
 
 14
 Garris then clubbed Thompson on the side of the head with a thirty-six inch riot baton.
 
 
 15
 Both Smith and Thompson sustained substantial injuries. Smith had a laceration on the side of his head and cuts on his chin and lip. His entire face was bruised and swollen. He sustained a concussion, which was evidenced by vomiting and a sluggish reaction of his right pupil to light. He also had bruises on his right arm, right chin, lower back and chest. He was discharged from the infirmary after two days.
 
 
 16
 Thompson's injuries, the most serious of which was a fractured skull, put him in the hospital for two months. Both of his eyes were bruised. His face and lips were so swollen that he was unable to open his mouth. He had a perforated eardrum and bruises on his chest, abdomen and right side.
 
 
 17
 Piedmont's Physician's Assistant, who saw both Smith and Thompson at the prison infirmary, testified that he had seen other prisoners against whom force had been used, but 'had never seen anything like these.' Dr. Farrington, Piedmont's Contract Physician, upon observing the inmates' injuries, commented to his Assistant, 'These guys were really beaten up.' Appellant Hinton, who saw both battered inmates in the prison infirmary, made no personal inquiry of the guards as to how the injuries were sustained. Yet, he filed reports with the North Carolina Department of Correction stating that Smith and Thompson had assaulted prison guards and the guards had used only enough force to protect themselves and maintain security and control on the Sixth Floor of the prison.
 
 
 18
 Appellant concedes on appeal that '[t]here is no question that the beatings occurred, and that there was a conspiracy.' (Appellant's Brief at 6). He contends, however, that there was insufficient evidence that he was a member of the conspiracy. We disagree. Once a conspiracy has been shown to exist, the evidence need establish only a slight connection between the defendant and the conspiracy to warrant a finding of guilt. United States v. Seni, 662 F.2d 277, 285 n.7 (4th Cir. 1981), cert. denied, 455 U.S. 950 (1982); United States v. Laughman, 618 F.2d 1067, 1076 (4th Cir.), cert. denied, 447 U.S. 925 (1980). The Government need not prove that the defendant knew all the phases and details of the conspiracy, but only that he participated in it with knowledge of its essential nature. United States v. Barnes, 747 F.2d 246, 249 (4th Cir. 1984). Where, as here, a prison superintendent instructs his guards to assault inmates and then, after observing the sad effects of the assaults, states in his official reports that the guards 'are to be commended for their courageous action', a jury well may find that the superintendent was connected with a conspiracy to deprive the inmates of their constitutional rights.
 
 
 19
 We find no merit in appellant's challenges to the district court's evidentiary rulings. Statements by appellant's coconspirators, made during the course of and in furtherance of the conspiracy were, of course, admissible. Bourjaily v. United States, 55 U.S.L.W. 4962 (June 23, 1987). Although coconspirators' statements made after the conspiracy had ended would not have been admissible, acts by the coconspirators, that were relevant as tending to prove that a conspiracy had existed, were admissible. Anderson v. United States, 417 U.S. 211, 218-19 (1974); Lutwak v. United States, 344 U.S. 604, 617-18 (1953). Thus, evidence that the guards involved in the beatings met in the prison library on the following day to coordinate their stories was properly admitted as tending to show that a conspiracy had existed. Moreover, the blatant nature of the library meeting tended to show that appellant had been a knowledgeable member of the conspiracy. That was the precise argument which the prosecutor made. The district court carefully instructed the jury that appellant was not charged with membership in a conspiracy to cover-up the beatings. Appellant has 'very much the laboring oar' in attempting to show that the district court's evidentiary rulings constituted reversible error. Hamling v. United States, 418 U.S. 87, 124 (1974). We are not persuaded that either the admission of the challenged evidence or the prosecutor's comments relative thereto call for reversal.
 
 
 20
 We likewise find no error in the district judge's questioning of the jurors concerning their possible exposure to prejudicial publicity. The judge followed this Court's repeated instructions as to how this not-unusual problem should be handled. See, e.g., United States v. Crowell, 586 F.2d 1020, 1024 (4th Cir. 1978), cert. denied, 440 U.S. 959 (1979). '[I]f no juror indicates, upon inquiry made to the jury collectively, that he has read or heard any of the publicity in question, the judge is not required to proceed further.' United States v. Hankish, 502 F.2d 71, 77 (4th Cir. 1974).
 
 
 21
 Finally, we reject appellant's contentions that comments by the prosecutor in his closing argument were sufficiently prejudicial to require reversal. The prosecutor suggested that the jurors might consider whether it would be reasonable for an innocent superintendent, confronted with clear evidence of brutal treatment of two inmates, to have made a thorough investigation. Appellant contends that the prosecutor was, in effect, telling the jurors they could find appellant guilty if they determined he had not acted reasonably. This is a distortion of the prosecutor's comments, which, of course, must be viewed in the light of the district court's correct charge on burden of proof.
 
 
 22
 At the close of his summation, the prosecutor told the jurors that their verdict of guilty would demonstrate the truth of the Government's allegations of wrongdoing and 'put a stop to this stuff.' While perhaps the quoted remark might better have been left unsaid, it did not amount to prejudicial error, particularly in view of the district court's admonishment that the jurors were not to base their verdicts upon anything other than the evidence in the case. See United States v. Kopituk, 690 F.2d 1289, 1342-43 (11th Cir. 1982), cert. denied, 461 U.S. 928 (1983); United States v. Alloway, 397 F.2d 105, 113 (6th Cir. 1968).
 
 
 23
 We have fully considered all of appellant's arguments and, there being no cause for reversal, the judgment of conviction is
 
 
 24
 AFFIRMED.