*This opinion is subject to revision before publication.*

# UNITED STATES COURT OF APPEALS
## FOR THE ARMED FORCES

————————

### UNITED STATES
Appellee

**v.**

### Andrew P. WITT, Senior Airman
United States Air Force, Appellant

**No. 22-0090**
Crim. App. No. 36785

Argued December 6, 2022—Decided June 5, 2023

Military Judge: Mark A. Bridges

For Appellant: *Major Jenna M. Arroyo* (argued); *Major Kasey W. Hawkins* and *Mark C. Bruegger*, Esq. (on brief).

For Appellee: *Major Morgan R. Christie* (argued); *Colonel Naomi P. Dennis, Lieutenant Colonel Thomas J. Alford*, and *Mary Ellen Payne*, Esq. (on brief); *Lieutenant Colonel Amanda L. K. Linares*, *Lieutenant Colonel Matthew J. Neil*, and *Major Zachary T. West*.

Judge SPARKS delivered the opinion of the Court, in which Judge MAGGS and Senior Judge CRAWFORD joined. Judge HARDY filed a separate opinion concurring in the judgment. Chief Judge OHLSON filed a separate dissenting opinion.

————————

Judge SPARKS delivered the opinion of the Court.

In 2005, a general court-martial consisting of officer members convicted Senior Airman Andrew P. Witt (Appellant), contrary to his pleas, of one charge and two specifications of premeditated murder in violation of Article 118, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 918 (2000); and one charge and specification of attempted premeditated murder in violation of Article 80, UCMJ, 10 U.S.C. § 880 (2000). The panel sentenced Appellant to death.

On appeal, the United States Air Force Court of Criminal Appeals affirmed the findings, but set aside the sentence and ordered a rehearing, after finding that Appellant had received ineffective assistance of counsel due to trial defense counsel's failure to investigate certain mitigating evidence. *United States v. Witt*, 72 M.J. 727, 758-66 (A.F. Ct. Crim. App. 2013). On reconsideration, the lower court held that the trial defense counsel's defective performance did not result in prejudice and affirmed the approved findings and sentence. *United States v. Witt*, 73 M.J. 738, 824-25 (A.F. Ct. Crim. App. 2014). Relevant to the current appeal, this Court vacated the lower court's second opinion and returned the case for a sentence rehearing in accordance with the lower court's original opinion. *United States v. Witt*, 75 M.J. 380, 385 (C.A.A.F. 2016).

On rehearing, Appellant was sentenced to confinement for life without the possibility of parole, a reduction in grade to E-1, forfeiture of all pay and allowances, a reprimand, and a dishonorable discharge. In relevant part, on appeal to the lower court, Appellant argued that trial counsel committed prosecutorial misconduct during sentencing. *United States v. Witt*, No. ACM 36785 (reh), 2021 CCA LEXIS 625, at *131, 2021 WL 5411080, at *40 (A.F. Ct. Crim. App. Nov. 19, 2021) (unpublished). The lower court found error in some of the Government's sentencing arguments but ultimately found no prejudice. *Id.* at *140-45, 2021 WL 5411080, at *43-44. The lower court affirmed the findings and new sentence. *Id.* at *166,

2021 WL 5411080, at *50. We then granted review of the following issue:

> During sentencing proceedings the trial counsel urged the panel members to consider how the sentence they imposed would reflect on them personally and professionally, and suggested that the members would be responsible for any harm Appellant committed in the future. Did the trial counsel's sentencing argument constitute prosecutorial misconduct that warrants relief?

*United States v. Witt*, 82 M.J. 424, 424-25 (C.A.A.F. 2022) (order granting review).

Appellant argues that the lower court erred when it found that trial counsel's improper argument did not constitute prejudice. Brief for Appellant at 18, *United States v. Witt*, No. 22-0090 (C.A.A.F. Aug. 5, 2022). We answer the granted issue in the negative and affirm the decision below.

## I. Background

### The Underlying Offenses

The genesis of the instant case stems from the murders of Senior Airman A.S. and his wife, J.S., and the attempted murder of Senior Airman J.K. by Appellant in 2004. Appellant and the couple were friends until he attempted to kiss J.S. After being told by his wife about the attempted kiss, A.S. and his friend J.K. called Appellant several times to confront him about the attempted kiss, as well as to threaten to tell his leadership about an alleged affair Appellant was having with an officer's wife. After the phone calls, Appellant changed into his battle dress uniform, drove to A.S.'s house where A.S., J.S., and J.K. were located, and stabbed all three, making sure not to "leave any evidence" or "witnesses."

### The Sentence Rehearing

At the rehearing on Appellant's sentence in 2018, trial counsel asked the panel variations of the following: "[w]hat will you stand for"; "[w]here will you draw the line"; "what

risk will you accept on someone else's behalf"; and if the panel would not sentence Appellant to death in this case, in what case would they do so? Trial counsel made these types of comments approximately seventy times while also displaying PowerPoint slides which contained the same questions. Additionally, throughout his argument trial counsel unequivocally requested the panel return a sentence of death.

Defense counsel objected only twice during arguments. The first objection was made near the end of trial counsel's two-hour argument, when defense counsel objected to trial counsel comparing Appellant's prison conditions to the surviving victim's future life.[1] The second objection was made almost immediately after the first, with defense counsel objecting to trial counsel's asking the panel "what risk will you accept on someone else's behalf?" The military judge overruled both objections. The panel deliberated for approximately eight hours before returning a sentence of life without the possibility of parole.

## II. Discussion

Appellant argues that trial counsel acted improperly when he asked the panel questions such as (1) "what will you stand for"); (2) "[w]here will you draw the line"); and "[w]hat risk will you accept on someone else's behalf." Appellant's theory is that these comments asked the panel members to consider what others would think of them based on their sentencing decision, which is improper under this Court's precedent in *United States v. Norwood*, 81 M.J. 12, 19 (C.A.A.F. 2021).

The Government's principal response is that trial counsel was not asking the panel members to consider how others would perceive them but instead asking them to act as the conscience of the community in making their decision. The Government asserts that the United States Courts of Appeals for the Fifth, Sixth, Eighth, Ninth, and Eleventh Circuits have all held that arguments appealing

---

[1] The content of this comment is not before us on appeal.

to the jury to act as the conscience of the community are permissible so long as the comments are not intended to inflame the passions of the jury.[2]

"Improper argument involves a question of law that this Court reviews de novo." *United States v. Frey*, 73 M.J. 245, 248 (C.A.A.F. 2014). "The legal test for improper argument is whether the argument was erroneous and whether it materially prejudiced the substantial rights of the accused." *Id.* (internal quotation marks omitted) (citation omitted). Because defense counsel failed to object to the arguments at the time of trial, we review for plain error.[3] *United States v. Rodriguez*, 60 M.J. 87, 88 (C.A.A.F. 2004). The standard for plain error review requires that: "(1) an error was committed; (2) the error was plain, or clear, or obvious; and (3) the error resulted in material prejudice to substantial rights." *United States v. Maynard*, 66 M.J. 242, 244 (C.A.A.F. 2008) (internal quotation marks omitted) (citation omitted). The burden lies with Appellant to establish plain error. *Id.*

Even were we to conclude that prosecutorial misconduct occurred, relief is merited only if that misconduct "actually impacted on a substantial right of an accused (i.e., resulted

---

[2] *See United States v. Ebron*, 683 F.3d 105, 146 (5th Cir. 2012); *United States v. Alloway*, 397 F.2d 105, 113 (6th Cir. 1968); *United States v. Johnson*, 968 F.2d 768, 770 (8th Cir. 1992); *United States v. Koon*, 34 F.3d 1416, 1444 (9th Cir. 1994), *aff'd in part and rev'd in part*, 518 U.S. 81 (1996); *United States v. Bailey*, 123 F.3d 1381, 1401 (11th Cir. 1997).

[3] Appellant concedes in his brief that trial defense counsel never objected to trial counsel's statements regarding the members' personal and professional reputations. But Appellant argues trial defense counsel did object to trial counsel's statements concerning the panel members' responsibility for future harm. We disagree. Trial defense counsel's only objection was: "Improper Argument. There is no evidence of future dangerousness in this case. It is not an aggravator." This objection concerns only the sufficiency of the evidence to support trial counsel's argument. The objection does not concern the general appropriateness of the argument, which is the subject of the assigned issue.

in prejudice).” *United States v. Fletcher*, 62 M.J. 175, 178 (C.A.A.F. 2005) (internal quotation marks omitted) (citation omitted). “[P]rosecutorial misconduct by a trial counsel will require reversal when the trial counsel's comments, taken as a whole, were so damaging that we cannot be confident that the members convicted the appellant on the basis of the evidence alone.” *United States v. Hornback*, 73 M.J. 155, 160 (C.A.A.F. 2014) (internal quotation marks omitted) (citation omitted). “Where improper argument occurs during the sentencing portion of the trial, we determine whether or not we can be confident that [the appellant] was sentenced on the basis of the evidence alone.” *Frey*, 73 M.J. at 248 (alteration in original) (internal quotations omitted) (citation omitted).

Here, we need only address the third element of plain error because, even assuming error, we see no evidence that the trial counsel’s arguments resulted in material prejudice to any of Appellant’s substantial rights. In assessing prejudice in cases of prosecutorial misconduct, we have looked at three factors: “(1) the severity of the misconduct, (2) the measures adopted to cure the misconduct, and (3) the weight of the evidence supporting the conviction.” *Fletcher*, 62 M.J. at 184. In *Fletcher* we made no determinations regarding how much weight to give each factor. However, in *United States v. Halpin*, we found that the third factor so overwhelmingly favored the government it was sufficient to establish lack of prejudice. 71 M.J. 477, 480 (C.A.A.F. 2013).

Here, as in *Halpin*, we find the weight of the evidence supporting the conviction strong enough to establish a lack of prejudice in and of itself. Given the charges for which Appellant was convicted there were three sentencing options for the panel to choose from: (1) death, (2) life without the option of parole, and (3) life with the option of parole. Article § 118, UCMJ, 10 U.S.C. § 918 (2000); *Manual for Courts-Martial, United States* pt. IV, para.43.e.(1) (2000 ed.) (*MCM*). The military judge instructed the panel prior to their deliberation that “a death sentence may not be adjudged unless all of the court

members find, beyond a reasonable doubt, that one or more aggravating factors existed," and "may not adjudge a sentence of death unless [the panel] unanimously find[s] that any and all extenuating and mitigating circumstances are substantially outweighed by any aggravating circumstances."

The Government contends that a sentence of life without the possibility of parole at a minimum was a "foregone conclusion," and thus regardless of any improper argument, the panel would have reached the same result. Appellant argues, however, that the panel's imposition of a sentence of life without parole was not supported when taking into consideration the many mitigating factors he presented,[4] his rehabilitative potential, and defense counsel's request that the panel choose the sentence offering Appellant the possibility of redemption—in addition to the fact that the option of life *with* parole was available to the panel.

We reject both arguments. It is unquestionable that throughout his argument, trial counsel's singular and unambiguous goal was to obtain a sentence of death. Additionally, the evidence of the crimes for which Appellant was convicted supported a death sentence. Appellant confessed to a set of incredibly vicious and deliberate stabbings resulting in the death of a young married couple and permanent injury to the third victim. Yet despite trial counsel's request and the nature of Appellant's crimes, the panel unanimously sentenced Appellant to life without parole, suggesting that they believed the aggravating circumstances were substantially outweighed by the extenuating and mitigating circumstances. True, we can never know what exactly is in

---

[4] Appellant listed twenty-six mitigating factors which include such things as Appellant's lack of prior criminal history, positive enlisted performance reports, his upbringing (which was influenced by mental health disorders in relatives and by relatives' addictive disorders), his schizotypal personality disorder, and his remorse for his crimes.

the mind of the members, yet here it stands to reason that they applied their own critical analysis to this case given their rejection of the death sentence despite trial counsel's comments. Thus, we find that Appellant has suffered no prejudice.

### III. Conclusion

The decision of the United States Air Force Court of Criminal Appeals is affirmed.

Judge HARDY, concurring in the judgment.

I concur with the Court's ultimate conclusion that trial counsel's sentencing argument did not result in material prejudice to any of Appellant's substantial rights. The majority arrives at that conclusion by faithfully applying this Court's precedents assessing whether trial counsel's improper comments at sentencing prejudiced Appellant. I write separately to express my view that those precedents are too permissive of improper argument at sentencing. In an appropriate case, I believe that we should reevaluate our approach to assessing prejudice from such errors.

The Court first developed the factors for assessing prejudice used today in *United States v. Fletcher*, a case addressing improper argument at the findings stage. 62 M.J. 175, 184 (C.A.A.F. 2005). In *United States v. Erickson*, this Court repurposed the *Fletcher* factors to assess prejudice from improper sentencing argument. 65 M.J. 221, 224 (C.A.A.F. 2007). As I believe this case illustrates, the *Fletcher* factors are ill suited for use at sentencing because they do not orient us toward our stated goal of determining " 'whether or not we can be confident that [the appellant] was sentenced on the basis of the evidence alone.' " *United States v. Witt*, __ M.J. __, __ (6) (C.A.A.F. 2023) (alteration in original) (quoting *United States v. Frey*, 73 M.J. 245, 248 (C.A.A.F. 2014)).

As modified for the sentencing context, the *Fletcher* factors instruct a reviewing court to weigh three considerations: (1) the severity of the misconduct; (2) the curative measures taken, if any; and (3) the weight of the evidence supporting the adjudged sentence. *Erickson*, 65 M.J. at 224-26. In the past, this Court has often placed significant weight on the third *Fletcher* factor—the weight of the evidence supporting the sentence. For example, in *Erickson*, we found no prejudice in a case where trial counsel erred by comparing the appellant to Adolph Hitler, Saddam Hussein, and Osama bin Laden and describing him as a demon belonging in hell. *Id.* at 222, 226. Noting that the appellant's criminal acts were "particularly egregious," the Court held that the evidence supported the conclusion that the appellant would have received the

same sentence irrespective of trial counsel's improper comments. *Id.* at 225-26.

Similarly, in *United States v. Halpin*, the appellant argued that trial counsel committed reversible error when he suggested during his sentencing argument that the appellant wanted his wife to die even though this assertion—as well as several others made by trial counsel—was not supported by any evidence in the record. 71 M.J. 477, 481-82 (C.A.A.F. 2013) (Erdmann, J., with whom Effron, S.J., joined, dissenting) (describing the alleged errors). Jumping straight to prejudice and the *Fletcher* factors, the Court concluded that "the third Fletcher factor weighs so heavily in favor of the Government that we are confident that Appellant was sentenced on the basis of the evidence alone." *Id.* at 480.

Finally, in *Frey*, the Court agreed with the lower court that trial counsel erred when he urged the panel members to apply common sense and their knowledge of the "ways of the world"—rather than any evidence in the record—to sentence the accused based on a risk of recidivism through serial molestation. 73 M.J. at 249. Applying the *Fletcher* factors, the Court found that "although the first two factors favor Appellant, the weight of the evidence supporting the sentence adjudged is such that we can be 'confident that Appellant was sentenced on the basis of the evidence alone.'" *Id.* (quoting *Halpin*, 71 M.J. at 480).

In my view, this Court's heavy reliance on the third *Fletcher* factor is problematic. Weighing the evidence supporting a conviction makes sense when there has been improper argument during the findings stage because there may be overwhelming evidence of guilt beyond a reasonable doubt despite the improper argument. But as the Court recently recognized in *United States v. Edwards*—a case dealing with the similar problem of erroneously admitted sentencing materials—prejudice tests developed in the findings context are not always well suited to sentencing. 82 M.J. 239, 247 (C.A.A.F. 2022). An appellate court faces a more challenging task when asked to determine whether an error had a substantial influence on the sentence (where there is a broad spectrum of lawful

punishments), as opposed to the finding (where there is only a binary choice between guilty and not guilty). *Id.* Sentencing requires balancing multiple considerations to craft a punishment that best serves the varied purposes of sentencing. *See* Rule for Courts-Martial (R.C.M.) 1002(f) (2019 ed.) (explaining that in imposing a sentence, the court-martial shall consider, inter alia, the circumstances of the offense and the history of the accused; the impact of the offense on others and on the command of the accused; rehabilitation; deterrence; and the protection of others). The *Fletcher* factors do not account for these nuances, especially when significant weight is placed on the third factor.

In applying the *Fletcher* factors to sentencing errors, the Court seems to be asking whether the adjudged sentence was appropriate for the committed offense despite the improper argument. But this is a different question than the one we purport to be answering: whether we are confident that Appellant was sentenced based on the evidence alone. And of course, this Court—unlike the service courts—has no authority to engage in sentence appropriateness. *See United States v. Fee*, 50 M.J. 290, 291 (C.A.A.F. 1999) ("Congress has vested the responsibility for determining sentence appropriateness . . . in the Court[s] of Criminal Appeals, not in this Court."). Employing a test that focuses on whether the evidence supports the sentence, despite the presence of error, arguably transcends those jurisdictional limitations. This Court's precedents emphasizing the third *Fletcher* factor only exacerbate that concern.

In the case at hand, I believe that trial counsel's comments amounted to obvious error, for the reasons explained by Chief Judge Ohlson. *Witt*, __ M.J. at __ (3-4) (Ohlson, C.J., dissenting). I add only that I am dubious of the Government's defense of these remarks as permissible appeals for the panel to speak as the "conscience of the community." Although the Government cites various cases from the federal courts of appeals in support of this

argument,[1] I do not find those cases—which arise solely from the civilian context—to be persuasive in the military context.

As this Court recently recognized in *United States v. Norwood*, trial counsel commits plain error by pressuring panel members to sentence the defendant based on how their fellow servicemembers will view the sentence they adjudge. 81 M.J. 12, 21 (C.A.A.F. 2021). This result makes sense because this type of sentencing argument invokes the specter of unlawful command influence when presented in a court-martial. In this case, trial counsel asked the panel members, "What will your sentence stand for? What will your sentence say?" Even if these comments can be characterized as asking the panel to speak as the conscience of the community, they also implicitly ask panel members to consider how the adjudged sentence will be perceived by their chain of command and encourage them to impose a harsher sentence for the sake of their own careers. These arguments have no place in the military justice system.

---

[1] *See, e.g.*, *United States v. Ebron*, 683 F.3d 105, 145-46 (5th Cir. 2012) (deeming the prosecution's question, " '[w]hat message would a life sentence send to [the defendant's] crew and the prison community' " a permissible appeal to act as the conscience of the community where the defendant, already imprisoned for a separate murder, killed a fellow inmate); *United States v. Alloway*, 397 F.2d 105, 113 (6th Cir. 1968) (finding the prosecution's request that the jury " 'speak out for the community' " to be a permissible "conscience of the community" argument); *United States v. Shirley*, 435 F.2d 1076, 1079 (7th Cir. 1970) (finding the closing argument not improper where the prosecution noted a rise in car thefts and increasing concern surrounding car thefts); *United States v. Bailey*, 123 F.3d 1381, 1401 (11th Cir. 1997) (finding the closing argument permissible where the prosecution asked the jurors to be people of dedication, judgment, integrity, and courage in rendering a decision); *but see United States v. Johnson*, 968 F.2d 768, 770-72 (8th Cir. 1992) (determining that the prosecution's request for the jury to " 'stand as a bulwark against' " the continuation of the defendant's drug dealing was an inflammatory and improper appeal to be the conscience of the community).

Nevertheless, due to the particular facts of this case, if we apply the *Fletcher* factors as our precedents dictate, Appellant cannot prevail.[2] Appellant committed gruesome crimes, and the panel members rejected the Government's explicitly requested sentence of death. In addition, rather than a broad spectrum of lawful punishments, Appellant faced only three possible sentences—death, life imprisonment without the possibility of parole, or life imprisonment with the possibility of parole. Article 118, UCMJ, 10 U.S.C. § 918 (2000); *Manual for Courts-Martial, United States* pt. IV, para. 43.e.(1) (2000 ed.). Considering all these factors, I agree that Appellant has not shown a reasonable probability that but for trial counsel's error, his sentence would have been different.

---

[2] Interestingly, when this Court recently found prejudice from similar improper sentencing argument in *Norwood*, it cited but did not expressly analyze the *Fletcher* factors. 81 M.J. at 19-21.

Chief Judge OHLSON, dissenting.

**Overview**

As the United States Air Force Court of Criminal Appeals (CCA) stated in its opinion, the trial counsel in this highly visible and emotionally charged murder case asked the panel "members to consider how *they would be judged by others* by virtue of the sentence they mete[d] out." *United States v. Witt*, No. ACM 36785 (reh), 2021 CCA LEXIS 625, at *141, 2021 WL 5411080, at *43 (A.F. Ct. Crim. App. Nov. 19, 2021) (unpublished) (emphasis added). In a military environment where the panel members could not only face social opprobrium from their peers but also suffer significant professional harm at the hands of their superiors, this potently toxic argument irredeemably poisoned the entire sentencing process. Because the majority declines to order a new, untainted sentencing proceeding, I respectfully dissent.

**Instances of Prosecutorial Misconduct**

As noted by the CCA, during his presentencing argument the "[t]rial counsel described the members' obligations in notably personal terms, such as when he asked the members, 'From E-6 to O-6, where else in your career will you have the opportunity to draw the line as an individual, and as an Airman on what you will allow?'" *Id.* at *133-34, 2021 WL 5411080, at *40. Trial counsel also argued as follows:

> Members, make no mistake about it; your sentence will send a message. It will send a message about what you as an individual, and what you as an Airman will accept. It will—it will tell everyone where you draw the line, and what you will stand for. It will.[1]

Trial counsel repeated this sentiment in various ways more than *seventy times*.

---

[1] I am nonplussed by the Government's assertion that these arguments by trial counsel were merely calls for the panel members to act as the proverbial conscience of the community when deciding what sentence to impose. As can be seen, the plain language of the trial counsel's statements refutes that claim.

As if this improper line of sentencing argument were not egregious enough, the trial counsel also essentially told the panel members that they would be accepting *personal responsibility* for any future victims of Appellant if they failed to sentence him in accordance with the Government's wishes. As one example, trial counsel's sentencing argument contained the following line: "What risk will you accept on another family's behalf?" As the CCA correctly concluded: "While Appellant's future risk of misconduct . . . was an appropriate consideration in fashioning Appellant's sentence, the suggestion that the members would be personally responsible for any such misconduct was not." *Id.* at *142, 2021 WL 5411080, at *43.

As can be seen, trial counsel engaged in flagrant and egregious improper argument. And as demonstrated below, I strongly believe that the majority's prejudice analysis is fundamentally flawed.

### The *Fletcher* Factors

In seeking to assess the prejudicial effect of the trial counsel's grossly inappropriate arguments, the majority relies on the factors derived from *United States v. Fletcher*, 62 M.J. 175, 184-85 (C.A.A.F. 2005). These factors include the severity of the misconduct, the curative measures adopted, and the weight of the evidence supporting the sentence. However, in concluding that under *Fletcher* Appellant suffered no prejudice at the hands of the Government because of the overwhelming weight of the sentencing evidence, the majority fails to adequately take into account three essential points.

First, this Court's recent observation in *United States v. Edwards*, 82 M.J. 239, 247 (C.A.A.F. 2022), about the prejudice test for improperly admitted sentencing evidence holds equally true for the *Fletcher* prejudice test applied to improper sentencing arguments. Specifically, the Court stated:

> Before analyzing the individual factors, it is worth noting that this test—which the Court has applied to errors that occur during both the findings and sentencing phases of the court-martial— is considerably more difficult to apply to

sentencing. Although there is a binary decision to
be made with respect to the findings (guilty or not
guilty), there is a broad spectrum of lawful pun-
ishments that a panel might adjudge. Complicat-
ing matters further, it is much more difficult to
compare the "strengths" of the competing sentenc-
ing arguments than it is to weigh evidence of guilt.
Proof of guilt can be overwhelming even without
the erroneously admitted evidence, but there is no
analogous analysis for determining the appropri-
ate sentence. It is thus harder for the Government
to meet its burden of showing that a sentencing
error did not have a substantial influence on a
sentence than it is to show that an error did not
have a substantial influence on the findings.

*Id.*

Second, in a case such as this one, the severity of the
misconduct by the government—as captured by the initial
*Fletcher* factor—may be so pernicious and so pervasive and
so ponderous that the scales of justice can *never* be righted
by the other *Fletcher* factors.

And third, the multiple *Fletcher* factors can be distilled
to a single passage from that opinion: "[P]rosecutorial mis-
conduct by a trial counsel will require reversal when the
trial counsel's comments, taken as a whole, were so dam-
aging that we cannot be confident that the members [sen-
tenced] the appellant on the basis of the *evidence alone.*"
*Fletcher*, 62 M.J. at 184 (emphasis added).

**Analysis**

Trial counsel's conduct—"[a]sking members to consider
how they would be judged by others by virtue of the sen-
tence they mete out"—grossly violated fundamental princi-
ples of proper sentencing argument. *Witt*, 2021 CCA LEXIS
625, at *141, 2021 WL 5411080, at *43; *see also United
States v. Baer*, 53 M.J. 235, 237 (C.A.A.F. 2000) (Members
must make their sentencing decision based upon "cool,
calm consideration of the evidence and commonly accepted
principles of sentencing." (citation omitted) (internal quo-
tation marks omitted)). A trial counsel's sentencing argu-
ment must be limited to "the evidence of record, as well as
all reasonable inferences fairly derived from such evi-
dence." *Baer*, 53 M.J. at 237. Sentencing must be about an

accused and his crimes, not about the panel members and their desire for public approval and self-promotion. *United States v. Shamberger*, 1 M.J. 377, 379 (C.M.A. 1976) (noting that trial counsel are prohibited from encouraging panel members "to cast aside the objective impartiality demanded of [them] as . . . court member[s] and judge the issue from the perspective of personal interest" (citation omitted) (internal quotation marks omitted)). Here, the trial counsel's repetitive and heavy-handed appeal to self-interest contaminated the sentencing proceedings beyond redemption.

Indeed, it is instructive to ponder the following point. During voir dire, if any of the panel members had stated that—when deciding upon the severity of the sentence to adjudge in this case—they would consider the effect a particular sentence could have on their personal reputation and military career, that panel member would have been deemed manifestly unqualified to sit on the court-martial. *See United States v. Youngblood*, 47 M.J. 338, 342 (C.A.A.F. 1997) (holding "that it was 'asking too much' of [two panel members] to expect them to impartially adjudge an appropriate sentence without regard for its potential impact on their careers" (citations omitted)); *see also United States v. Wood*, 18 C.M.A. 291, 296, 40 C.M.R. 3, 8 (1969). And yet here—without so much as a simple curative instruction—the trial counsel essentially implored all of the panel members to adopt that precise approach and the majority fails to find sufficient prejudice to merit a new sentencing proceeding. In the recent case of *United States v. Norwood*, 81 M.J. 12, 21 (C.A.A.F. 2021), we held that it was reversible error for trial counsel to "pressure[] the [panel] members to consider how their fellow servicemembers would judge them and the sentence they adjudged instead of the evidence at hand." I cannot see any meaningful distinction between that case and the instant case, and the majority opinion offers none. Thus, the result in this case should be the same result as in *Norwood*—setting aside the sentence and authorizing a sentence rehearing.

Even in a case such as this one where the offenses are so heinous and the outcome of the sentencing proceeding is seemingly so obvious, the fundamental fairness of the

court-martial *process* matters. Deeply. And by discounting that principle in the instant case by finding "no prejudice" when the Government has employed such flagrant and noxious tactics, the majority's decision bodes ill for how trial counsel will think they can conduct themselves in future sentencing proceedings.

**Conclusion**

The prosecution in this court-martial repeatedly exhorted the panel members to disregard the objective impartiality demanded of them under the law by urging them to factor into their sentencing decision their own personal and professional interests. Such misconduct by the Government irredeemably contaminated the entirety of the sentencing process. Because the majority has declined to take the necessary step of ordering a new sentencing proceeding in this case, I respectfully dissent.