UNITED STATES of America, Plaintiff–Appellee,

v.

**Bruce Clark RELIFORD, Defendant–Appellant.**

No. 94–5791.

United States Court of Appeals, Sixth Circuit.

Argued March 21, 1995.

Decided June 27, 1995.

Tony R. Arvin, Asst. U.S. Atty. (argued and briefed), Office of the U.S. Atty., Memphis, TN, for plaintiff-appellee.

Doris A. Randle–Holt (argued and briefed), Office of the Federal Public Defender, Memphis, TN, for defendant-appellant.

Before: JONES, CONTIE, and BATCHELDER, Circuit Judges.

BATCHELDER, Circuit Judge.

The defendant, Bruce Clark Reliford, was convicted of motor vehicle theft and carjacking in violation of 18 U.S.C. § 2119; interference with commerce and robbery in violation of 18 U.S.C. § 1951; and two counts of use of a firearm during commission of a crime of violence in violation of 18 U.S.C. § 924(c). Reliford appeals his conviction, arguing that the district court erroneously admitted hearsay evidence and that the prosecutor's conduct and comments during closing argument unfairly prejudiced his right to a fair trial. We affirm the conviction.

## I.

On the morning of Christmas Eve 1992, Reliford robbed a service station convenience store at gunpoint, terrorizing the store's three female employees in the process. He fled the store with car keys belonging to one of the employees. Unable to open the car door, Reliford crossed the parking lot to a nearby restaurant and climbed into a garbage dumpster, where he left his green jacket and a paper bag containing the money he had stolen. A restaurant patron, Shannon Wilson, left the restaurant about that time. Witnesses in the restaurant heard a loud metallic crashing sound in the area of the dumpster and, thinking someone might have driven into it, walked to the doorway to investigate. The first witness to reach the door, Vincent Price, reported hearing a loud pop like a car backfiring or a gunshot as he

reached the glass exterior door. In the restaurant parking lot, he saw Shannon Wilson lying on the ground and Reliford standing over him. Wilson yelled, "He shot me!" Price and his companion testified that Reliford looked each of them full in the face several times before driving away in Wilson's car. At the scene and while en route to the hospital, Wilson repeatedly commented incredulously on how Reliford had shot him even though Wilson had surrendered his car keys. Wilson died later that day of a gunshot wound to the chest. Later that morning, the bullet was recovered from the restaurant parking lot. That evening, Reliford was arrested, and laboratory tests revealed that Reliford's hands contained gunshot residue. The bullet was a positive match to the .38 caliber gun recovered from the house where Reliford was arrested.

On Christmas Day, the three female convenience store employees, restaurant patron Price, and his companion viewed two lineups (a total of twelve men). All five eyewitnesses identified Reliford as the robber/carjacker. The next day, Reliford dictated a confession to a police officer and police transcriptionist but then declined to sign the transcribed statement.

Reliford admitted at trial that he was guilty of the armed robbery, which had been captured on videotape. All five eyewitnesses again identified Reliford in court as the robber/carjacker. During direct examination of each eyewitness, the Government introduced into evidence the index cards on which the witnesses had written their identification of the defendant in the lineup and the instruction sheets given to the witnesses and signed by them prior to their viewing the lineups. The defense objected to these documents as hearsay. The district court admitted the documents into evidence, ruling that they were not hearsay. The defense also objected to introduction of written statements Price gave to police the day of the incident and two days later, which the district court had admitted into evidence as prior consistent statements under Fed.R.Evid. 801(d)(1).

During closing argument, the Assistant United States Attorney argued that the defendant's testimony was a "fairy tale" and "so ridiculous" that it "shows as well as the Government's proof that he's guilty." The Government urged the jury "to return a verdict that tells the defendant ... that the citizens of the Western District of Tennessee won't tolerate these types of crimes." Defense counsel did not object at trial to any of the prosecuting attorney's remarks. The jury returned a verdict of guilty on all counts. Reliford was sentenced to life in prison plus twenty-five years, followed by three years of supervised release. This timely appeal followed.

## II.

### Admissibility of the Evidence

Reliford argues that it was error to admit the lineup instruction sheets and index cards on which the witnesses had written their identification of him, because "any probative value of the lack of suggestive lineups necessarily depends upon whether the records accurately reflect the lineups themselves and whom the witness picked out or didn't pick out of the lineups." The Government argues that the trial judge properly instructed the jury regarding the purpose of the exhibits and also contends that the exhibits were not hearsay within the meaning of the Rules of Evidence because they were not declarative statements offered to prove the truth of the matter asserted.

The record supports the Government's argument. The exhibits were not hearsay; they were admitted for the purpose of showing that the lineup was not suggestive. The trial judge repeatedly issued proper instructions to the jury regarding the limited purpose for which they could consider the exhibits.

On cross examination of Price, Reliford's attorney challenged the witness's recollection of events: "Mr. Price, your memory gets better with time, doesn't it?" On redirect, the court granted the Government's motion to admit written statements Price had given to police on December 24, 1992, and December 26, 1992, as prior consistent statements to rebut an express or implied charge of recent fabrication under Fed.R.Evid.

801(d)(1).[1] The prior written statements were consistent with Price's testimony on the stand recounting the sequence of events at the carjacking. The statements supported Price's testimony that Reliford had looked at him as Reliford got into the victim's car and again as Reliford backed the car and prepared to drive away. It was proper for the court to admit the witness's prior consistent statements after the defense attorney had challenged his recollection.

## III.

### The Prosecutor's Conduct During Closing Argument

 Reliford argues on appeal that the prosecuting attorney unfairly prejudiced his case by repeatedly stating during closing argument that the Government had proven its case "beyond a reasonable doubt," and "beyond any possible doubt;" by characterizing Reliford's testimony as "unbelievable," "ridiculous," and "a fairy tale;" by stating that "[a] confession alone, all by itself, is enough to convict;"[2] and by requesting the jury "to return a verdict that tells the defendant, Bruce Clark Reliford, that the citizens of the Western District of Tennessee won't tolerate these types of crimes." Reliford's counsel did not object to the prosecutor's remarks at trial; therefore, we review the Government's closing remarks for plain error. *United States v. Young*, 470 U.S. 1, 15–16, 105 S.Ct. 1038, 1046–47, 84 L.Ed.2d 1 (1985); *United States v. Carroll*, 26 F.3d 1380, 1383 (6th Cir.1994).

 Under the plain error standard, we reverse a conviction "only in exceptional cir-

cumstances" and "only where the error is so plain that 'the trial judge and prosecutor were derelict in countenancing it.' " *Carroll*, 26 F.3d at 1383 (citations omitted). As we recently clarified, this Court considers claims of nonflagrant[3] improper prosecutorial remarks under the two-step approach introduced in *United States v. Bess*, 593 F.2d 749, 753–57 (6th Cir.1979). *See Carroll*, 26 F.3d at 1386–87. Under the *Bess* approach, we first must determine whether the prosecutor's remarks were improper; if so, the prosecutor's conduct rises to reversible error if the proof of guilt is not overwhelming and defense counsel objects, and the trial judge fails to admonish the jury. *Id.* at 1385.

 The Government's characterizations of the strength of its case and the credibility of Reliford's trial testimony were not improper. Reliford contended at trial that a friend of his shot the victim Shannon Wilson, took Wilson's car, and picked up Reliford at the restaurant. This account conflicts with what Reliford himself said was his plan for the robbery, and with testimony of eyewitnesses at the restaurant that Reliford was the carjacker. In the face of the overwhelming evidence against him and his own statements to the police, Reliford's story at trial *was* incredible, and Reliford's counsel failed to object to the Government's argument.

 A prosecutor in closing argument may review the evidence that has been presented, and may comment on the strength of the Government's proof, *see United States v. Drake*, 885 F.2d 323, 323–24 (6th Cir.1989), *cert. denied*, 493 U.S. 1049, 110 S.Ct. 852, 107 L.Ed.2d 846 (1990), so long as these com-

---

1. The Rule states:
 A statement is not hearsay if—
 (1) Prior statement by witness. The declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement, and the statement is ... (B) consistent with the declarant's testimony and is offered to rebut an express or implied charge against the declarant of recent fabrication or improper influence or motive
 ....
 Fed.R.Evid. 801(d).

2. Although this is not a correct statement of the law, it is not sufficient to require a reversal. The trial judge's failure to correct the statement *sua*

*sponte* is not plain error where, as here, it is clear from the entire context of that part of the argument that Government counsel was pointing out to the jury all of the evidence of the defendant's guilt and simply misstated the significance of this piece of the evidence. Also, the judge, not the Government's counsel, is responsible for instructing the jury on the law, and there is no claim made here that the jury instructions were not correct.

3. None of the remarks of Government counsel that the defendant complains of could be said to be "flagrant" as we explained that concept in *Carroll*, 26 F.3d at 1386.

ments do not constitute improper vouching, see *Carroll,* 26 F.3d at 1389, and are not made to inflame the jury, *see United States v. Solivan,* 937 F.2d 1146, 1151 (6th Cir. 1991). In this case, where the evidence of Reliford's guilt was overwhelming, we cannot say that the trial judge's failure *sua sponte* to admonish the jury when the defense counsel did not object to these comments was plain error.

The Government insists that the prosecutor's request in closing argument that the jury "return a verdict that tells the defendant, ... that the citizens ... won't tolerate these types of crimes" was even more innocuous than the comments made by the prosecutor in *United States v. Alloway:*

> You the jurors, are called upon in this case to be the world conscience of the community. And I'm calling on this jury to speak out for the community and let the John Alloways know that this type of conduct will not be tolerated, that we're not going to tolerate....

397 F.2d 105, 113 (6th Cir.1968). There, we upheld the district court's denial of a mistrial, finding that the prosecutor's argument did not exceed the permissible bounds of advocacy. *Id.*

Although we find that the language of the Government's counsel in this case did not actually cross the line into prosecutorial misconduct, we think it was wholly unnecessary even to approach that line. The Government's comments were not comparable to the argument in *Solivan,* which appealed to the fears and conscience of the community by inviting the jury to convict the defendant as part of the War on Drugs. 937 F.2d at 1148–49, 1152–55. Even so, we think that it is worth repeating the caution set out in *Solivan:*

> [I]t is the duty of the prosecutor to advance the government's cause with force and persuasiveness. However, this duty encompasses concerns beyond mere advocacy. The prosecutor has a concomitant duty not to derogate from a fair and impartial criminal proceeding.

*Id.* at 1150.

As counsel for the Government well knows, every criminal defendant is entitled to be tried on the charges contained in the indictment, and only on those charges. The jury may convict the accused only if the evidence relating to those charges convinces them of the defendant's guilt beyond a reasonable doubt. The jury may not convict the accused in order to send a message to the public or the community at large; they may not hold the defendant responsible for the crimes of others. While the Government's verdict request to this jury did not derogate from a fair and impartial trial, we question the wisdom of using such rhetoric, when to do so may risk a mistrial and may provide a clearly guilty defendant an issue for appeal.

### IV.

For the reasons stated above, the defendant's conviction is AFFIRMED.