NOT RECOMMENDED FOR PUBLICATION
File Name: 21a0362n.06

**Nos. 19-5077/5142**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

FILED
Jul 23, 2021
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| v. | ) | COURT FOR THE WESTERN |
| | ) | DISTRICT OF KENTUCKY |
| EARL CLAYTON, III, | ) | |
| | ) | |
| Defendant-Appellant. | ) | **OPINION** |
| | ) | |
| | ) | |

**Before: MOORE, CLAY, and STRANCH, Circuit Judges.**

**CLAY, Circuit Judge.** Defendant Earl Clayton III ("Defendant" or "Clayton III") was convicted by a jury of conspiracy to possess with intent to distribute 100 grams or more of heroin, in violation of 21 U.S.C. §§ 846 and 841(a)(1), (b)(1)(B), and being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1). The district court determined that Defendant was a career offender and sentenced him to 360 months of incarceration. The district court also revoked Defendant's supervised release and added twenty-four months to his sentence because he had committed a crime while under supervision. Defendant appeals his convictions and the revocation of his supervised release. Defendant argues that the district court erred in denying his motion to suppress because the police lacked reasonable suspicion to stop his vehicle on the day of his arrest. Defendant also contends that he is entitled to a new trial because of an erroneous supplemental instruction on deadlocked juries, various evidentiary errors, and prosecutorial misconduct in closing argument. We **AFFIRM**.

## BACKGROUND

### Factual Background

Defendant Earl Clayton III was arrested on November 24, 2015 after a Federal Bureau of Investigation High Intensity Drug Trafficking Area task force had been investigating his son, Earl Clayton IV ("Clayton IV"), for over a year. The day before, task force officer Detective Kevin McKinney obtained a search warrant for Clayton IV's house based on surveillance of Clayton IV and the fact that there had been numerous controlled purchases of heroin from the home since October 2014, one of which had been made within the previous forty-eight hours.

The morning of November 24, 2015, Detective McKinney did a spot check of the residence prior to the execution of the search warrant. At that time, he saw a white Chevrolet Monte Carlo in the driveway and Defendant at the back door of the home.

Later that morning, Detective McKinney returned to Clayton IV's home with a special weapons and tactics ("S.W.A.T.") team to execute the search warrant. As the S.W.A.T. team was approaching the residence, McKinney observed the Monte Carlo driving toward the house, and it appeared to him that Defendant was driving the vehicle. When the police were next door to Clayton IV's house and Defendant's car was about four or five houses down, Detective McKinney saw the Monte Carlo reverse at a high rate of speed away from the home. Detective McKinney then radioed other officers to stop the vehicle.

Detective McKinney eventually went to the scene of Defendant's stopped vehicle, read Defendant his rights, and took him to Clayton IV's home. A handgun was found in the vehicle. At the home, officers found heroin and electronic scales. At that point, Defendant was arrested.

**Procedural Background**

Defendant and his son, Clayton IV, were initially charged as co-defendants in a drug conspiracy. Defendant moved to suppress certain evidence, including evidence obtained as a result of the November 24, 2015 stop, arguing that the police lacked reasonable suspicion to detain him. The district court denied the motion.

On December 4, 2017, Clayton IV reached a plea agreement with the prosecution and would later testify as a government witness at his father's trial. The next day, Defendant was charged in a single-defendant second superseding indictment with conspiracy to possess with intent to distribute 100 grams or more of heroin, in violation of 21 U.S.C. §§ 846 and 841(a)(1), (b)(1)(B), as well as being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1).

Defendant's trial began on February 5, 2018. The district court elected to try the two counts in one bifurcated trial, with the jury receiving evidence as to Defendant's criminal history only in the second phase of trial concerning the felon in possession charge. However, the district court allowed the government to introduce evidence of the firearm that was found in the vehicle in the first phase of trial, which related to the drug conspiracy charge. Defendant was convicted on the drug conspiracy charge on February 8, 2018. The trial then proceeded to the felon in possession count, and Defendant was convicted on that charge as well.

At a sentencing hearing on January 11, 2019, Defendant was determined to be a career offender under the sentencing guidelines, and was sentenced to 360 months of imprisonment. Defendant timely appealed.

The district court also determined that Defendant had violated the terms of his supervised release by committing a federal, state, or local crime. Accordingly, the district court revoked his

supervised release and sentenced Defendant to a prison term of fifty-one months, twenty-four of those months to be served consecutively to his 360-month sentence in the underlying criminal case. Defendant timely appealed the order revoking his supervised release.

## DISCUSSION

### I. Motion to Suppress

The district court properly denied Defendant's motion to suppress evidence obtained as a result of his seizure by police on November 24, 2015 because the police had reasonable suspicion to stop Defendant's vehicle.

#### A. Standard of Review

"When reviewing a denial of a motion to suppress, the district court's factual determinations are reviewed for clear error and its legal conclusions are reviewed *de novo*." *United States v. Pacheco*, 841 F.3d 384, 389 (6th Cir. 2016). "Whether an officer had reasonable suspicion under the circumstances is a mixed question of law and fact that we review de novo." *United States v. Stepp*, 680 F.3d 651, 660 (6th Cir. 2012). We view the evidence in the light mostly likely to support the district court's decision. *United States v. Abernathy*, 843 F.3d 243, 250 (6th Cir. 2016).

#### B. Reasonable Suspicion

Officers had reasonable suspicion to stop Defendant's car based on prior information they had received about Defendant's involvement in drug trafficking and their observations of his conduct on November 24, 2015.

An officer's decision to initiate a traffic stop and the scope of any subsequent search are reviewed "under the principles set forth in *Terry v. Ohio*, 392 U.S. 1 (1968)." *Stepp*, 680 F.3d at 661. In this case, Defendant challenges only "whether there was a proper basis for the stop." *Id.*

(quoting *United States v. Davis*, 430 F.3d 345, 354 (6th Cir. 2005)). "[T]he reasonable suspicion standard governs the legality of traffic stops when the suspected violation is a criminal offense rather than a civil infraction." *United States v. Sanford*, 476 F.3d 391, 394 (6th Cir. 2007).[1] As Detective McKinney's testimony at the suppression hearing made clear, he requested that officers stop Defendant's vehicle because he suspected that Defendant was involved in drug trafficking, not because he had committed a traffic violation.

"Under [the Supreme] Court's precedents, the Fourth Amendment permits an officer to initiate a brief investigative traffic stop when he has 'a particularized and objective basis for suspecting the particular person stopped of criminal activity.'" *Kansas v. Glover*, 140 S. Ct. 1183, 1187 (2020) (quoting *United States v. Cortez*, 449 U.S. 411, 417–18 (1981)). Whether officers had reasonable suspicion to stop an individual is determined under the totality of the circumstances. *United States v. Sheckles*, 996 F.3d 330, 343 (6th Cir. 2021).

As an initial matter, Defendant appears to suggest that, because Officers Nathan Cary and Todd Jensen, who actually stopped his vehicle, did so solely on the basis of a request from Detective McKinney, the requisite reasonable suspicion to justify the seizure was lacking. However, the government correctly points out that this Court "impute[s] collective knowledge among multiple law enforcement agencies, even when the evidence demonstrates that the responding officer was wholly unaware of the specific facts that established reasonable suspicion for the stop." *United States v. Lyons*, 687 F.3d 754, 766 (6th Cir. 2012). Accordingly, the relevant question in this case is whether Detective McKinney, who directed his colleagues to stop the white

---

[1] There appears to be an outstanding question in this Circuit as to whether the probable cause standard applies to suspected completed traffic violations, but that issue is not presented by the facts here and need not be considered. *See United States v. Shelton*, 817 F. App'x 217, 219 & n.2 (6th Cir. 2020).

Monte Carlo, had "a particularized and objective basis for suspecting the particular person stopped of criminal activity." *Glover*, 140 S. Ct. at 1187 (quoting *Cortez*, 449 U.S. at 417–18).

The district court correctly found that Detective McKinney had such a basis in its order denying Defendant's motion to suppress. As McKinney testified at the suppression hearing, he had observed Defendant make a short stop that morning at a home where McKinney knew heroin had been purchased within the past few days. According to Detective McKinney, a short stay indicated a probable narcotics transaction. Later, Detective McKinney saw Defendant's vehicle approach the home again, but then back up at a high rate of speed within sight of S.W.A.T. officers preparing to execute a search warrant. Detective McKinney could see that Defendant was driving the car, and he knew that Defendant was the father of the person police suspected of selling drugs out of the home. Detective McKinney also knew that Defendant had a history of drug trafficking. Moreover, from prior purchases of heroin from Clayton IV, the police had gained knowledge that Defendant was involved in the particular drug trafficking they were investigating. It was on the basis of all these factors that Detective McKinney had Defendant's vehicle stopped. The district court's opinion thoroughly explained why all of the factors relied upon by Detective McKinney— evasive behavior, location, criminal history—can properly form the basis of a reasonable suspicion of criminal activity.

None of Defendant's arguments demonstrate error in the district court's analysis. Defendant correctly points out that criminal history alone is insufficient to give rise to reasonable suspicion, but that is not what happened in this case. Instead, as discussed above, Defendant's history of drug crimes was only one factor in "the totality of the circumstances [that] demonstrate[d] a reasonable suspicion that criminal activity was afoot." *Stepp*, 680 F.3d at 667.

In fact, in *Stepp*, the case that Defendant cites for the proposition that criminal history alone is not sufficient to give rise to reasonable suspicion, this Court observed that "the criminal history reports . . . were specific and related to the same suspicions that the officer was developing—that the occupants of the vehicle might be involved in drug trafficking," and we "agree[d] that the specific nature of [the defendants'] criminal histories—involvement with narcotics—casts a suspicious light . . . ." *Id.* That logic is fully applicable in this case where Detective McKinney was investigating a drug crime and partially based his reasonable suspicion determination on Defendant's prior history of drug crimes.

Second, Defendant asserts that Detective McKinney lacked an objective basis for suspecting that Defendant was involved in Clayton IV's drug trafficking. However, Detective McKinney testified that while no controlled heroin purchases had been made from Defendant directly, Clayton III had been mentioned during prior sales as a facilitator of the heroin transaction. This is an objective basis for McKinney's suspicion that Defendant was involved in Clayton IV's drug trafficking.

Third, Defendant challenges Detective McKinney's reliance on the so-called "traffic violation"—Defendant's rapidly backing up his vehicle once he could see the S.W.A.T. team preparing to execute a warrant on his son's home. Defendant accurately quotes *United States v. Lott*, 954 F.3d 919 (6th Cir. 2020), in his brief for the point that "nervous behavior alone is legally insufficient to establish [] reasonable suspicion." *Id.* at 923. But *Lott* does not help Defendant because Detective McKinney's reasonable suspicion determination was not based on what Defendant characterizes as nervous behavior, nor on that factor alone. Rather, Detective McKinney considered, as the government emphasizes, Defendant's "unprovoked flight upon noticing the

7

police," in addition to the other factors discussed in this section. *Illinois v. Wardlow*, 528 U.S. 119, 124 (2000).

Finally, Defendant suggests that, because Detective McKinney knew that Defendant was the father of the resident of the home to be searched, Defendant's visits could not support a reasonable suspicion determination. However, Detective McKinney explained that Defendant's short stay was suggestive of a drug transaction. The reasonable suspicion inquiry "allows officers to draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them . . . ." *United States v. Arvizu*, 534 U.S. 266, 273 (2002). Defendant provides no reason to disturb Detective McKinney's professional judgment that Defendant's visits to his son's home on November 24, 2015 were indicative of drug trafficking rather than made for purely familial purposes.

This Court has found that police had reasonable suspicion to stop defendants in factual scenarios very similar to those presented here. *See, e.g.*, *Sheckles*, 996 F.3d at 344 (finding police had basis to stop the defendant as he was leaving an apartment that the police were in the process of obtaining a search warrant for, when police had information that the defendant was involved in the drug sales at the property to be searched and that the defendant had a prior felony drug conviction). On the other hand, Defendant does not explain how the cases discussed in his reply brief, *United States v. Townsend*, 305 F.3d 537 (6th Cir. 2002), and *United States v. Johnson*, 620 F.3d 685 (6th Cir. 2010), where we found the police lacked reasonable suspicion, apply to the facts of his case. The district court did not err in concluding the police had reasonable suspicion to stop Defendant's vehicle on November 24, 2015 and properly denied Defendant's motion to suppress.

8

## II.     Supplemental Jury Instruction

The district court's response to a jury question about what would happen if the jurors were deadlocked was not plain error, contrary to Defendant's argument on appeal.

### A.  Standard of Review

Because Defendant did not object to the district court's response to the jury's inquiry, this claim is reviewed for plain error. *United States v. Ray*, 803 F.3d 244, 277 (6th Cir. 2015); *see also United States v. Brika*, 416 F.3d 514, 519 (6th Cir. 2005) (reviewing *Allen* charge for plain error when there was no objection before the district court). The government's argument that Defendant waived any appeal of the supplemental jury instruction because he agreed to the instruction is primarily based on this Court's interpretation of Michigan law in *Tackett v. Trierweiler*, 956 F.3d 358, 371 (6th Cir. 2020), under 28 U.S.C. § 2254, which has no application to this case where Defendant was tried in a federal district court. To the extent that our precedent is unclear as to whether trial counsel's agreement with a judge's proposed course of conduct renders Defendant's challenge to the supplemental instruction unreviewable, *see United States v. Sloman*, 909 F.2d 176, 182 (6th Cir. 1990), "we need not declare a winner on the standard-of-review point" because Defendant's challenge "fails even on plain-error review." *United States v. Buchanan*, 933 F.3d 501, 509 (6th Cir. 2019).

Under plain error analysis, a defendant must demonstrate: "(1) error; (2) that was plain; (3) that affected a substantial right and that seriously affected the fairness, integrity, or public reputation of the judicial proceedings." *United States v. Sherrill*, 972 F.3d 752, 762 (6th Cir. 2020) (quoting *United States v. Fields*, 763 F.3d 443, 456 (6th Cir. 2014)). In order to demonstrate that a substantial right was affected, a defendant is required to "'show a reasonable probability that,

but for the error,' the outcome of the proceeding would have been different." *Molina-Martinez v. United States*, 136 S. Ct. 1338, 1343 (2016) (quoting *United States v. Dominguez Benitez*, 542 U.S. 74, 76 (2004)). "In the context of challenges to jury instructions, plain error requires a finding that, taken as a whole, the jury instructions were so clearly erroneous as to likely produce a grave miscarriage of justice." *United States v. Small*, 988 F.3d 241, 254 (6th Cir. 2021) (quoting *United States v. Newsom*, 452 F.3d 593, 605 (6th Cir. 2006)). "The propriety of a supplemental instruction must be measured 'by whether it fairly responds to the jury's inquiry without creating . . . prejudice." *Id.* (alteration in original) (quoting *United States v. Giacalone*, 588 F.2d 1158, 1166 (6th Cir. 1978)).

**B. District Court's Response to Jury Question About Deadlock**

The district court's response to a jury question about what would happen if they were deadlocked was not plain error.

Approximately four hours after deliberations began on the drug conspiracy charge, the jury submitted a note to the district court asking, "What happens if there is a hung jury?" (2/8/18 Trial Tr., R. 147, Page ID #1090.)[2] The district court was "careful to note the jury's not reported that it is hung. They are asking what happens if they are. So I propose to bring them into the courtroom and tell them that I have the note and they've inquired as to what happens if there is a hung jury." (*Id.*) The district court further proposed that it "would say that if the jury is unable to reach a unanimous verdict, that needs to be reported to the Court and that the case may be tried again. That's a snippet from the Allen charge. I'm not going to give them an Allen charge unless they

---

[2] Record citations in this opinion are to No. 15-cr-153 (W.D. Ky.), the criminal case that went to trial, and not No. 09-cr-25 (W.D. Ky.), the case for which Defendant's supervised release was revoked.

report they are hung." (*Id.*) The court then confirmed that the jury had been deliberating between four and four-and-a-half hours and suggested that it "would say, 'Go ahead and go back to the jury room and continue your deliberations.'" (*Id.*) The district court also clarified that the parties and the court could reconsider what to do if the jury reported they were hung at some later time. Counsel for the government and Defendant agreed with the court's proposal.

After the jury returned to the courtroom, the district court read the jury note out loud and reminded the jurors that "it is your duty as jurors to discuss this case with one another in an effort to reach agreement if you can do so. So that is your duty here, as I've also mentioned, deciding the case for yourself, full consideration of the evidence with other members of the jury, etcetera." (*Id.* at Page IDs ##1091–92.)

The district court then stated, "I want you to go back and continue your deliberations. If there is a hung jury—the question is 'What happens if there is a hung jury?' Well, that would be reported to the Court. You would let us know that you're hung, and if you were, then we would likely poll each of you to see if you agree that the jury is hung and the case may be tried again. So go ahead and go on back to the jury room and continue your deliberations." (*Id.* at Page ID #1092.) Twelve minutes later, the jury returned a unanimous guilty verdict on the drug conspiracy charge.

Defendant claims that the district judge's response to the jury's question improperly directed a guilty verdict. The Supreme Court endorsed the use of instructions, within limits, "to 'blast' a deadlocked jury into rendering a unanimous verdict" in *Allen v. United States*, 164 U.S. 492 (1896). *United States v. Clinton*, 338 F.3d 483, 487 (6th Cir. 2003). A so-called "*Allen* charge" instructs "a potentially deadlocked jury to continue their deliberations and reconsider each other's views in good faith." *United States v. Robinson*, 872 F.3d 760, 772 (6th Cir. 2017).

Defendant's main argument that the supplemental instruction regarding deadlocked juries entitles him to a new trial is that the district court failed to deliver Sixth Circuit Model Criminal Jury Instruction 9.04. As a factual matter, it is true that the district court did not deliver the model instruction on deadlocked juries. Instead, the court repeated its previous instruction that the jurors had an obligation to discuss and consider the case with each other to reach an agreement on the verdict if they were able to do so and gave a "snippet from the Allen charge" that if the jury was hung, the case might be tried again. (2/8/18 Trial Tr., R. 147, Page IDs ##1090–92.) But according to Defendant's own arguments, an *Allen* charge would not have been appropriate in this case. Defendant recognizes that the Sixth Circuit model *Allen* charge can be given when the jury informs the court that it is deadlocked. *See United States v. Roach*, 502 F.3d 425, 440 (6th Cir. 2007). Here, the district court was careful to note that the jury had not reported that it was hung and that it was "not going to give them an Allen charge unless they report that they are hung." (2/8/18 Trial Tr., R. 147, Page ID #1090.) Even if Defendant had objected to the district court's supplemental jury instruction, the decision to deliver an *Allen* charge is reviewed for abuse of discretion since "the presiding judicial officer is in the best position to decide when to give the charge . . . ." *United States v. Frost*, 125 F.3d 346, 373 (6th Cir. 1997) (alteration in original) (quoting *United States v. Sawyers*, 902 F.2d 1217, 1220 (6th Cir. 1990)). Defendant does not argue or demonstrate that the district court abused its discretion in determining that the jury had not reported it was deadlocked and declining to deliver an *Allen* charge. *See also United States v. Fisher*, 648 F.3d 442, 447 (6th Cir. 2011) ("A district court, however, should refrain from straying beyond the purpose of jury instructions by answering jury questions that seek collateral or inappropriate advice.").

The other challenges to the supplemental jury instruction are equally unavailing. Defendant emphasizes that the district court's response was incomplete because while it said the case could be tried again if the jury was deadlocked, the supplemental instruction did not tell the jury that another jury would be empaneled for that trial. Defendant's speculative hypothesis that the jury voted to convict because they did not want to hear the case again does not show the "'reasonable probability that, but for the error,' the outcome of the proceeding would have been different," that Defendant is required to demonstrate under plain error review. *Molina-Martinez*, 136 S. Ct. at 1343 (quoting *Dominguez Benitez*, 542 U.S. at 76). Defendant also claims that the jury members were not told that they should not be afraid to reconsider their positions. However, the district court reminded the jury of their duty to discuss the case and evaluate the evidence with the other jury members and to continue their deliberations. Defendant does not explain how the district court's failure to use the language he suggests on appeal was incorrect, let alone plain error. *See Small*, 988 F.3d at 253 (describing how a jury instruction would not justify reversal, even if objected to and reviewed for abuse of discretion, if it was substantially accurate).

Defendant also asserts that the district court erred by telling the jury that if they reported they were hung, they would be polled to determine whether the panel members agreed that the jury was deadlocked. To clarify, the jury was never polled, and it is also far from clear that such polling would be inappropriate. In *Lowenfield v. Phelps*, 484 U.S. 231 (1988), the Supreme Court reviewed on habeas a state jury trial in which the judge had individually polled the jury as to whether they believed or felt further deliberations would be helpful in reaching a verdict. *Lowenfield* recognized that the Supreme Court had previously reversed a conviction in *Brasfield v. United States*, 272 U.S. 448 (1926), after the trial court had inquired as to how the jury was

divided on guilt. However, *Lowenfield* distinguished the judicial inquiries of the jury in the two cases: "Here the inquiry as to the numerical division of the jury was not as to how they stood on the merits of the verdict, but how they stood on the question of whether further deliberations might assist them in returning a verdict. There is no reason why those who may have been in the minority on the merits would necessarily conclude that further deliberation would not be helpful or that those in the majority would necessarily conclude otherwise." *Lowenfield*, 484 U.S. at 240; *see also Brown v. Bradshaw*, 531 F.3d 433, 437 (6th Cir. 2008) (recognizing that Supreme Court held in *Lowenfield* that polling the jury as to whether further deliberations would be helpful was permissible). In *Lowenfield*, the Supreme Court recognized that some combination of polling and supplemental instructions to continue deliberations was not coercive. Accordingly, Defendant has not shown that the district court's declaration that it would poll the jury as to whether they agreed they were deadlocked if they reported they were hung was an erroneous statement of law.

*Lowenfield* also forecloses Defendant's claim that he can easily show the district court's supplemental instruction affected his substantial rights, as required under plain error review, because the jury delivered a verdict within twelve minutes of its delivery. Thirty minutes after the trial court in *Lowenfield* gave the contested instruction, the jury reached a verdict sentencing the petitioner to death. *Lowenfield*, 484 U.S. at 235, 240. The Supreme Court found relevant "that defense counsel did not object to either the polls or the supplemental instruction," inferring that "such an omission indicates that the potential for coercion argued now was not apparent to one on the spot." *Id.* at 240. The Supreme Court's analysis demonstrates that Defendant's assertion that he can easily show coercion because of the short time period between the instruction and the verdict is misplaced. *See also Small*, 988 F.3d at 255 (concluding that fact that jury reached guilty

verdict shortly after challenged supplemental instruction is insufficient to demonstrate prejudice, "much less a grave miscarriage of justice").

### III.    Evidentiary Claims

Considered individually or in combination, none of the evidentiary rulings challenged by Defendant justify reversing the district court's judgment and granting his request for a new trial. The fact that Defendant failed to respond to the government's arguments on appeal in his reply brief "only underscores the point." *Williams v. WCI Steel Co.*, 170 F.3d 598, 607 (6th Cir. 1999) (per curiam).

### A.  Standard of Review

The Court "generally review[s] evidentiary rulings for abuse of discretion. An abuse of discretion occurs when the district court relies on clearly erroneous facts, uses an erroneous legal standard, or improperly applies the law." *United States v. Hazelwood*, 979 F.3d 398, 408 (6th Cir. 2020) (citations omitted).[3] "[R]eversal is appropriate only if the abuse of discretion was not harmless error, that is, only if the erroneous evidentiary ruling affected the outcome of the trial." *United States v. Morales*, 687 F.3d 697, 702 (6th Cir. 2012) (quoting *United States v. Marrero*, 651 F.3d 453, 471 (6th Cir. 2011)). As relevant here, "[t]he wrongful admission of evidence of prior bad acts constitutes harmless error 'if the record of evidence of guilt is overwhelming, eliminating any fair assurance that the conviction was substantially swayed by the error.'" *United States v. Brown*, 888 F.3d 829, 836 (6th Cir. 2018) (quoting *United States v. Clay*, 667 F.3d 689, 700 (6th Cir. 2012)).

---

[3] "There is some turmoil in this circuit when it comes to reviewing Rule 404(b) rulings." *Hazelwood*, 979 F.3d at 408. However, for the reasons explained below, that issue need not be resolved in this case.

Defendant did not challenge the admission of Clayton IV's plea agreement into evidence before the district court. "When a defendant fails to object at trial, we review an evidentiary ruling for plain error." *United States v. Kilpatrick*, 798 F.3d 365, 378 (6th Cir. 2015).

The government argues that Defendant did not preserve his challenge to testimony about his prior incarceration because his trial counsel did not specifically invoke Federal Rule of Evidence 404(b), which generally bars the admission of other act evidence. The government's brief suggests that trial counsel only objected because the question on cross-examination that elicited the testimony about Defendant's prior incarceration was outside the scope of the direct examination. But that is not the case. Defendant's trial counsel asked for a mistrial because "they've got in testimony that my client's a convicted felon." (2/7/18 Trial Tr., R. 146, Page ID #971.) The district court understood that trial counsel was objecting to prior act evidence and concluded that, since Defendant did not testify, Rule 609, which permits impeachment by evidence of a criminal conviction, did not authorize admission of the testimony. The government's argument that Defendant failed to develop his argument that evidence of his prior imprisonment should not have been admitted on appeal is equally unpersuasive. Defendant explained in his opening brief why admission of his incarceration would be prejudicial.

## B. Rule 404(b) Challenges

### 1. Evidence of Firearm

As the government persuasively argues, evidence of the firearm seized the day of Defendant's arrest and introduced during the drug conspiracy phase of trial was not other act evidence subject to Rule 404(b). Instead, the firearm found in Defendant's vehicle was evidence of Defendant's drug trafficking in this case.

The district court decided to try Defendant's heroin conspiracy and felon in possession counts in a bifurcated proceeding. The court ruled that while evidence regarding the firearm could be introduced during the first phase of trial on the heroin conspiracy count, the jury would only receive evidence regarding Defendant's felon status after reaching a verdict on the drug crime. The district court rejected Defendant's one-page motion to preclude the government from introducing evidence of the firearm during the conspiracy portion of the trial. Defendant objected to the introduction of the firearm during trial, and was again denied by the district court.

The problem with Defendant's challenge to the introduction of the firearm during the drug conspiracy phase of his trial is that this Court has repeatedly found that "firearms, as tools of the drug-trafficking trade, are probative evidence in drug prosecutions." *United States v. Cleveland*, 907 F.3d 423, 436 (6th Cir. 2018) (quoting *United States v. Wheaton*, 517 F.3d 350, 364 (6th Cir. 2008) (citing cases)). Defendant recognizes these precedents, but argues, without citation, that they do not support admission of evidence regarding the gun to support his drug conspiracy conviction because there was no evidence that Defendant used the gun as a "tool of the trade," and the firearm and the narcotics were found in different locations. It is certainly true that physical proximity between firearms and narcotics tends to show a connection between the two, but that factor is not necessary for the admission of firearm evidence in a drug trafficking case. *See United States v. Hardin*, 248 F.3d 489, 499 (6th Cir. 2001) (approvingly citing out-of-circuit decision where gun was found to be used in connection with a drug crime despite not being found with drugs).

Moreover, in this case, there was evidence that Defendant was using the firearm as a tool of the drug trade. Detective McKinney testified at trial that Defendant told him that the firearm found in the vehicle "was his and that he needed it for his protection." (2/6/18 Trial Tr., R. 145,

17

Page ID #850.) McKinney also testified about the connections between drug traffickers and firearms, explaining that drug dealers do not generally call the police if they are robbed or assaulted and "a firearm might be necessary to help protect themselves and their narcotics and also the proceeds from the narcotics." (*Id.*) After that testimony, Defendant yet again objected to the introduction of the gun, claiming that it was not "relevant to help these jurors decide if this is a conspiracy for heroin." (*Id.* at Page ID #851.) The district court rejected this objection "based on this evidence we have here . . . ." (*Id.*)

The district court did not abuse its discretion in admitting evidence of the firearm during the drug conspiracy phase of Defendant's trial. "[E]vidence of possession of firearms is admissible to prove conspiracy with intent to distribute controlled substances because such possession is ostensibly for the purpose of protecting the efficiency of the drug trafficking enterprise." *United States v. Young*, 847 F.3d 328, 355 (6th Cir. 2017) (alteration in original) (citation omitted). In this case, while the gun and drugs were not found in the exact same location, Defendant possessed the firearm as he was approaching the house where the drugs were found. The gun and drug charges were "sufficiently connected temporally or logically to support the conclusion that the two crimes [were] part of the same transaction or plan," so as to justify admission of the firearm as a tool of the trade during the drug conspiracy phase of Defendant's trial. *United States v. Chavis*, 296 F.3d 450, 459 (6th Cir. 2002) (quoting *United States v. Gorecki*, 813 F.2d 40, 42 (3d Cir. 1987)).

## 2. Threat Against Clayton IV

Defendant's challenge to the admission of Clayton IV's testimony about threats Defendant made is equally unavailing. Clayton IV testified how his father (i.e., Defendant) told him, "I know you know what I'm capable of," in the midst of a heated conversation about this criminal case and

after Defendant found out that Clayton IV had told the police that Defendant had supplied Clayton IV with heroin. (2/6/18 Trial Tr., R. 145, Page IDs ##715, 724.) Clayton IV testified that he understood Defendant's statement "to mean that he might do some harm to me" and that "[p]ossibly" Defendant might mean to kill him. (*Id.* at Page ID #724.) Clayton IV also testified that he believed his father had been involved in a shooting against Clayton IV.

The admission of Clayton IV's testimony about his father's threat did not violate Rule 404(b). The district court correctly cited *United States v. Mendez-Ortiz*, 810 F.2d 76 (6th Cir. 1986), and *United States v. Copeland*, 321 F.3d 582 (6th Cir. 2003), for the proposition that a defendant's threats against a witness are generally admissible. In *Mendez-Ortiz*, the Court held that evidence that a heroin trafficker had "attempted to bribe and threatened a witness [] is admissible to show consciousness of guilt." *Mendez-Ortiz*, 810 F.2d at 79. *Copeland* and many other cases have endorsed this reasoning, which is fully applicable here. *Copeland*, 321 F.3d at 597; *see United States v. Cordero*, 973 F.3d 603, 619 (6th Cir. 2020) (listing cases).

Defendant cites *United States v. Richardson*, 597 F. App'x 328, 332 (6th Cir. 2015), to argue that the district court failed to make the required finding that "sufficient evidence exists that the bad act actually occurred" before admitting Clayton IV's testimony regarding Defendant's threat. However, that is not a part of the required procedure when a court is determining whether to admit evidence of a defendant's threat against a witness. This Court has determined whether testimony regarding threats against a witness should be admitted under Rule 403 and by balancing of the probative value of the evidence against its unfair prejudicial effect. *Copeland*, 321 F.3d at

597.[4] One of the cases cited by Defendant in support of his argument, *United States v. Al-Din*, 631 F. App'x 313, 324 (6th Cir. 2015), even recognized that Rule 403 is a proper test for admissibility of evidence of threats against witnesses.

A Rule 403 balancing is precisely what the district court did when confronted by Defendant's challenge to the admission of Clayton IV's threat testimony. It found that "the probative value of the threat evidence is not substantially outweighed by the danger of unfair prejudice to the Defendant . . . actually the probative value is important and high. There is prejudice but I don't think it meets the standard of Rule 403." (2/6/18 Trial Tr., R. 145, Page ID #718.) Defendant provides no reason to question, let alone reverse, the district court's Rule 403 determination, which is reviewed under a particularly deferential abuse of discretion standard, where the probative value of the evidence is viewed generously, and its unfair prejudice with caution. *See Sherrill*, 972 F.3d at 764.

### 3. Defendant's Prior Imprisonment

The district court did not err by admitting testimony elicited by the government that Defendant had been in prison because the district court did not admit any such evidence and, in fact, specifically issued an instruction excluding it.

Defendant presented his sister, Bonnie Jo Mitchell, as a witness. Mitchell testified that Clayton IV, who testified against Defendant, had a general character for untruthfulness. On cross-examination, she explained that Defendant had been to prison for selling drugs. Defendant objected

---

[4] *Richardson* applied the so-called "three-tiered standard of review for Rule 404(b) determinations," which Defendant has not shown this Court applies to claims of spoliation, as at issue here. *United States v. LaVictor*, 848 F.3d 428, 445 (6th Cir. 2017). Accordingly, the ongoing uncertainty within this Court and between the circuits regarding proper review of Rule 404(b) determinations does not affect the analysis in this case. *Id.* at 445 & n.4.

to this testimony and moved for a mistrial on the basis that the jury now knew that he was a convicted felon. The district court denied the motion and stated that the testimony was only evidence that Defendant had been in prison, not that he had been convicted of a felony.

After further consideration and review of the transcript, the district court concluded the prosecutor's question that had elicited Mitchell's response that Defendant had been in prison was inappropriate. Ultimately, the district court determined that Mitchell's response was vague because she only testified that Defendant had sold drugs a long time ago, and it was unclear whether he was imprisoned because of a felony or misdemeanor. In lieu of Defendant's request for a mistrial, the district court issued a curative instruction that the jury disregard any testimony from Mitchell regarding Defendant. The district court considered giving an instruction that would specifically direct the jury to disregard any testimony about Defendant's prior drug dealing, but determined it was more prudent not to raise the issue again.

"[J]urors are presumed to follow the trial court's instructions." *United States v. Bradley*, 917 F.3d 493, 508 (6th Cir. 2019) (alteration in original) (quoting *United States v. Hynes*, 467 F.3d 951, 957 (6th Cir. 2006)). Defendant's claim on appeal that no curative instruction was given is incorrect, and he provides no reason why the instruction that was given did not protect his right to a fair trial. *See United States v. Johnson*, 581 F.3d 320, 330 (6th Cir. 2009) ("Even assuming that the Government's cross-examination of Mrs. Johnson was improper, any impropriety was not flagrant. Although the statement could initially have misled the jury about Mrs. Johnson's credibility, the court quickly issued a curative instruction, and nothing about this particular line of questioning suggests that the misimpression it might have created was not effectively cured by the instruction.").

21

## C. Admission of Co-Conspirator's Plea Agreement

We also reject Defendant's challenge to the admission of Clayton IV's plea agreement. As discussed above, Defendant did not object to the admission of this evidence before the trial court, so the district court's evidentiary ruling is reviewed for plain error.

Defendant correctly points out that "the guilty plea of a co-defendant or co-conspirator is never admissible as substantive evidence of a defendant's guilt," quoting *United States v. Carson*, 560 F.3d 566, 574 (6th Cir. 2009). But *Carson* also recognized, in the next sentence, that "[s]uch evidence [i.e., a plea agreement], however, may be considered by the jury in evaluating the co-defendant's credibility as a witness." *Id.*

More specifically, *Carson* explained that the limiting instruction that the district court gave in this case—"the fact that a witness has pled guilty to the crime charged in the indictment is not evidence in and of itself of the guilt of any other person" (2/8/18 Trial Tr., R. 147, Page ID #1081.)—cured any prejudice relating to the admission of a plea agreement and a prosecutor's comments about it. *Id.* at 576. Defendant offers no reason why that instruction was not equally curative in this case.

## D. Cumulative Effect of Evidentiary Errors

Defendant's claim on appeal is that the cumulative effect of evidentiary errors deprived him a fair trial. "However, cumulative-error analysis is not relevant where no individual ruling was erroneous." *United States v. Deitz*, 577 F.3d 672, 697 (6th Cir. 2009). For the reasons discussed above, Defendant has not demonstrated any erroneous evidentiary ruling by the district court. Accordingly, cumulative-error analysis is not appropriate in this case, and Defendant has not shown he is entitled to a new trial.

## IV. Prosecutorial Misconduct

Defendant has not demonstrated flagrant prosecutorial misconduct that would entitle him to a new trial.

### A. Standard of Review

"When a defendant fails to object to alleged prosecutorial misstatements at trial, as was the case here, we review for plain error." *United States v. Hall*, 979 F.3d 1107, 1119 (6th Cir. 2020). "In reviewing a claim of prosecutorial misconduct under the plain-error standard of review, we must first determine whether the statements at issue were improper. If so, we then have to decide whether they were sufficiently flagrant to warrant reversal of the defendant's conviction despite his failure to object to them at trial." *United States v. Modena*, 302 F.3d 626, 634 (6th Cir. 2002) (citation omitted). Defendant has not made this showing.

### B. Statements in Closing Argument

At least one of the statements raised in Defendant's challenge was not improper, let alone flagrant. Defendant takes issue with the prosecutor's statement that "[p]eople that traffic in this poison in our society cannot be effectively prosecuted unless when you catch one, see if you can flip him so that you can get not only him or her but the next person up the hierarchy." (2/7/18, R. 146, Page ID #1036.) In an unpublished decision, a panel of this Court in *United States v. Scott*, 716 F. App'x 477 (6th Cir. 2017), surveyed other circuits and "found that referring to narcotics as poison is within the proper bounds of closing argument." *Id.* at 487. An unpublished decision is not binding, but may be considered for its persuasive value. *Sanford*, 476 F.3d at 396. *Scott*'s analysis regarding prosecutorial references to drugs as "poison" has been approvingly cited by at least one published decision, *United States v. Cleveland*, 907 F.3d 423, 438 (6th Cir. 2018), and

one other unpublished decision, *United States v. Meadows*, 822 F. App'x 434, 442 (6th Cir. 2020), and Defendant provides no reason why a single isolated reference to heroin as poison was prosecutorial misconduct that deprived him of his right to a fair trial.

The government concedes that statements the prosecutor made during closing argument regarding Kentucky law as to the legally proper means of carrying a firearm in a vehicle was itself improper because no evidence about the appropriate way of carrying a gun in that state was introduced into evidence. The government also does not contest that the prosecutor inappropriately told the jurors to "do their job," when he said, "I just ask you don't let him get away with it." (2/7/18 Trial Tr., R. 146, Page ID #1064.) "Statements that exhort the jury to 'do its job' are improper." *Modena*, 302 F.3d at 634 (quoting *United States v. Young*, 470 U.S. 1, 18 (1985)).

Another prosecutorial statement describing Detective McKinney as "an experienced highly trained veteran narcotics investigator with an unblemished record, decorated veteran, who has been doing narcotic cases for years, has done hundreds of them," challenged by Defendant was possibly inappropriate. (2/7/18 Trial Tr., R. 146, Page ID #1044.) In *United States v. Davis*, 514 F.3d 596 (6th Cir. 2008), this Court found that statements bolstering officer witnesses as "public servants who risk their lives every day," while possibly improper, did not significantly affect the fairness of the proceedings. *Id.* at 616 (quotation marks omitted).

In his opening brief, Defendant suggested that two other statements made during the prosecutor's closing argument were inappropriate. First, Defendant asserts that the prosecutor's rhetorical question that "[w]e don't confess to serious crimes unless we did it, do we?," was prejudicial because it suggested that Defendant's confession and statements to police after he was stopped and arrested on November 24, 2015 were sufficient to convict him. (2/7/2018 Trial Tr., R.

24

146, Page ID #1044.) It is not at all apparent that the prosecutor's statement implied that Defendant's confession was sufficient to convict, rather than constituting a recognition that a confession is strong evidence of guilt. *See Harbison v. Bell*, 408 F.3d 823, 834 (6th Cir. 2005). Even if the prosecutor's statement did imply that a confession was sufficient for conviction, it did not rise to the level of reversible prosecutorial misconduct. In *United States v. Reliford*, 58 F.3d 247 (6th Cir. 1995), the prosecutor explicitly said that a confession alone is sufficient to convict, and this Court found there was no misconduct sufficient to justify a new trial. *Id.* at 251–52 & n.2.

Second, Defendant also takes issue with the prosecutor's statement about Clayton IV, who had taken a plea deal, that "[e]ven if he is a dope dealer, he's man enough to admit what he did and take his licks," was improper. (2/7/18 Trial Tr., R. 146, Page ID #1048.) However, Defendant offers no explanation of why this statement was improper or prejudiced him, forfeiting the argument. *See Scott v. First S. Nat'l Bank*, 936 F.3d 509, 522–23 (6th Cir. 2019).

Thus, on the most generous to Defendant reading of the prosecutor's closing argument, there were three improper statements:  (1) an admittedly inappropriate reference to Kentucky law; (2) an arguable attempt to exhort the jury to "do its job"; and (3) bolstering of a government witness. Regardless of the resolution of any arguments regarding propriety of these statements, Defendant's argument for a new trial on the basis of prosecutorial misconduct in closing argument fails because he presents no substantive argument that these errors were flagrant, a showing he recognizes is required for reversal. He does not explain "1) whether the statements tended to mislead the jury or prejudice the defendant; 2) whether the statements were isolated or among a series of improper statements; 3) whether the statements were deliberately or accidentally before

the jury; and 4) the total strength of the evidence against the accused." *Cleveland*, 907 F.3d at 438 (quoting *United States v. Tarwater*, 308 F.3d 494 , 511 (6th Cir. 2002)).

Defendant has not shown that the prosecutor's improper statements "were flagrant enough to affect [his] substantial rights," and his appeal on this basis is denied. *Hall*, 979 F.3d at 1119.

## CONCLUSION

For the reasons stated above, we **AFFIRM** Defendant's convictions and sentence in No. 19-5077. Defendant's appeal of the revocation of his supervised release in No. 19-5142 is limited to his challenges to those convictions, which the district court determined constituted a violation of his supervised release. Because we affirm Defendant's underlying convictions, we also **AFFIRM** the district court's judgment in No. 19-5142.